## Gregory et al. v. Crain.

Feb. 27, 1942.

Doolan, Helm, Stites & Wood for appellants.

Joseph Sellinger and Frank C. Greene for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Many years ago the residential section now known as St. James Court, in Louisville, Kentucky, was subdivided into resident lots, which were later sold to purchasers to be occupied by them for resident purposes. The plat of the subdivision, as well as the deeds of the grantor conveying each lot, contained a number of restrictions limiting the use of the conveyed property by the various vendees. Among such restrictions was one saying that the property should be used by the vendee, his heirs and assigns, "for resident purposes only." All deeds and other informative documents containing such restrictions were put to record so as to furnish constructive notice to all future purchasers of any lot within the subdivision. In a great majority of the later conveyances by the original vendee of a lot, the title to which was so restricted, the same restrictions were inserted in the deed or reference was made to the record in the County Court Clerk's office of former deeds and conveyances containing such restrictions.

On February 2, 1940, the appellee and defendant below, Mary A. Crain, purchased one of the lots in the subdivision of St. James Court upon which had been erected a large and commodious residence, containing twenty-four rooms. She made some repairs on it and moved

into it on April 1st, following the date of her purchase. She is a graduated and professional nurse and appears to have been unmarried. For a number of years prior to her purchase of the lot in St. James Court she was engaged in the business of operating and conducting within her residence located at different places in the City of Louisville, a sort of home for aged people, who because of senility, or other causes, were unable, either physically or mentally, to care for or provide for their necessities and wants. The number of such unfortunates who applied for and gained entrance into defendant's home so as to receive the necessary attention and care from defendant which their condition demanded, varied from as low as five inmates to as high as fifteen, and it is clearly manifested by the proof—even by defendant herself—that mental affliction is no obstacle to admittance into the group of people whom she takes in and administers to in the manner indicated, although she testified that at the time of giving her evidence there were no mental cases under her care. She admitted, however, that the entire number she then had in her newly acquired home in St. James Court were laboring under physical affliction produced by one cause or another so as to render them practically helpless and to require more or less attention by either professional or practical nurses and that she, as owner of the premises and a graduated nurse, supervised the attention bestowed upon them. Some patients required rolling chairs and practically, if not all of them, have their meals sent to them in their respective rooms, some of which latter contain hospital beds, and the proof is undisputed that practically all of them remain as patients or inmates of defendant's institution—by whatever name it may be designated—until their bodies are deposited in the grave. She receives for such attentions a monthly agreed upon compensation, and from that source she maintains herself and secures the means with which to conduct her institution. From the time defendant commenced the activities described the telephone number for her institution was "Magnolia 2068," and she carried that number with her when moving to St. James Court. Following her purchase of the lot in that Court but before she repaired it and moved into it with her patients or inmates, she ran an advertisement in the Courier-Journal, reading: "Private Hospital—Aged people, mental, surgical cases; registered nurses, day and night, reasonable,

Magnolia 2068.'' The record also shows that one patient —who the record shows was greatly impaired mentally— was burned to death by her clothing becoming ignited in some way.

In repairing her building in St. James Court, following her purchase of it, she installed iron bars over the windows of some of the rooms and likewise arranged the doors thereto so as to prevent occupants escaping therefrom. It is true that defendant testified that at the time she was giving her testimony she had in her home no mental patients, but she admitted that practically all of them at that time were extremely feeble physically and to all intents and purposes needed constant care and attention. The proof further shows that the servants employed by defendant, and a young lady whom she was furnishing board and lodging in consideration of services to be rendered to patients, each and all assisted defendant in serving her patients as she had contracted to do. Also, that whensoever any of her inmates or patients needed the presence and attention of a constant nurse she supplied one, some of whom gave their testimony in this case.

Defendant testified as to the neatness and cleanliness of her premises, both as to the interior of her residence and the outside premises. She introduced a number of physicians, who had theretofore called on various inmates of her institution, and they testified to the clean condition of the premises, all of which we regard as foreign to the issue involved. After defendant purchased her property in St. James Court, plaintiffs herein who owned resident property in St. James Court, gave her notice of the restrictions above referred to (which, however, she already knew) and protested against her converting the property she bought from that of a residence to that of an institution of the kind and character in which she had theretofore engaged. But she ignored it and brought her patients along with her at the time she moved into the property, some of whom were so weak, physically, that they had to be carried into the building from the conveyance that brought them there by the persons who moved defendant from her former location to her new one. After defendant ignored the protests of plaintiffs and following her removal to her newly acquired home, plaintiffs filed in the Jefferson Circuit Court this Equity action against her, setting up in their

petition the restrictions upon her title above referred to, and prayed for an injunction prohibiting her from operating the described institution in or upon the property, as being violative of the restrictions requiring the property to be used "for resident purposes only."

The defense was a denial, followed by one of waiver of the restrictions, and a third one that the conditions had changed since the formation of St. James Court to such an extent as to render it no longer necessary for the restrictions to be complied with. Following pleadings made the issues and the case was referred to the Court's Commissioner to take proof and report, which he did. The recitation of his finding of fact departed but little, if any, from our recitation, supra, concerning the same issues. Notwithstanding the undisputed character of the testimony, the Commissioner finally concluded and reported that: "Your Commissioner finds as a fact that defendant is not operating a sanitarium or hospital for mental cases, but that she is operating a boarding house which some might call a nursing home, but that it does not violate the restrictions against the use of the property for residence purposes only."

Plaintiffs filed exceptions to that conclusion of the Commissioner but the Court, after hearing, overruled them and dismissed their petition, upon the ground, as stated in the Court's opinion, that "Defendant's enterprise is a boarding home for old people," and that a boarding house is a residence, and that old and decrepit people have the right to engage board for themselves the same as those who are not afflicted in any manner, and that the extra attention required to be bestowed on such enfeebled boarders is merely incidental to their condition and that, since the proof showed and the Commissioner found that a few of the occupants of homes in St. James Court had theretofore taken in healthy and normally conditioned boarders, the strict application of the restraint herein involved had been waived, thereby permitting defendant to operate her institution which the Court found to be merely a boarding house. It will have been perceived that the Court is not concerned with any restrictions in defendant's title, save and except the one confining the use of the property to be for resident purposes only.

This appeal by plaintiffs from the judgment, dismissing their petition, is therefore narrowed to the sole

question of, whether or not the enterprise conducted by the defendant may be classified—as the Court did in its judgment—as nothing more than conducting a boarding house? For if that conclusion be correct then the restriction herein involved would not be violated under some former rulings of this Court. See Ulmer v. Ulrey, 280 Ky. 457, 133 S. W. (2d) 744, and cases cited. In those cases we construed the restrictions requiring the property to be used for resident purposes only were not violated by the owner or occupant taking in boarders, or lodgers, possessing their normal faculties, when conducted in the usual way that such activities are performed and when followed by no sort of disturbing influences. So that the question to be determined in this case is further narrowed to whether or not the described occupancy which defendant makes of her property may be given only the same effect as the taking in of mere boarders, such as we have described and such as appeared in our opinions referred to?

Both sides seem to concede that the operation of a sanitarium, a feeble-minded institute, a regular medical hospital, an old folks' home, or any other institution, where the inmates require, besides regular board, treatment and nursing attention not demanded by persons in normal conditions, would violate the restrictions herein involved, and that such appropriated use of the premises may not be excused on the ground that the afflicted inmates are mere boarders. That defendant's enterprise which she conducts in her recently purchased home in St. James Court comes within one or more of the forbidden uses of her property is most thoroughly established by the testimony and even admitted by defendant herself. In her newspaper advertisement, she describes her enterprise as a private hospital for aged people and for mental and surgical cases. She also advertised therein that she maintained registered nurses day and night, and it would appear that we need look in no other direction for a proper designation of the character of the enterprise in which she is engaged and to which she devotes the use of her building, although practically all of the testimony in the case, independently of such advertisement, proved what defendant published therein. Substantiating the conclusions we have expressed are the texts in 14 Am. Jur., page 623, Section 217, and cases cited in the notes thereto. Also, a notation on page 1138 of 43 A. L. R. From the authorities we have referred to and numerous

other cases that might be listed in line with them, we cannot escape the conclusion that the learned trial judge erroneously classified defendant's use of her premises, so as to take it out of the restrictions under consideration and to permit her to continue it upon the theory that the inmates of her residence were mere boarders. We fail to find from the evidence adduced that either of the other two defenses should be sustained, since, neither of them—waiver, or changed conditions—are sufficiently manifested so as to make them available as a defense.

Having arrived at that conclusion, it follows that the judgment should be and it is reversed, with directions to grant the injunction prayed for and for other appropriate proceedings not inconsistent with this opinion.