# Crain v. City of Louisville et al. City of Louisville v. Crain. Smyser et al. v. Same.

May 26, 1944.

As Extended on Denial of Rehearing

October 20, 1944.

W. S. Heidenberg for appellants.

Lawrence S. Poston, Lawrence Duncan, T. A. Luman and John H. Chandler for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming in part, reversing in part.

In Gregory v. Crain, 290 Ky. 323, 161 S. W. 2d 49, 50, we held that a covenant restricting the use of property in St. James Court, in Louisville, "for resident purposes only" had been violated by the appellee, Miss Mary Crain, by conducting in it what was generally described as a "Nursing Home." On the evidence we regarded it as a private hospital. Afterward, in July, 1942, Miss Crain purchased residence property on Cherokee Road in which there was no such restriction in the title. Upon objections being raised to the operation of her institution there, she filed an application for a permit under the Zoning Ordinance of the city and a "variation order" from the Board of Adjustments and Appeals. Section 3037h-111 et seq., Kentucky Statutes; General Ordinances of the City of Louisville, No. 471; defined in Selligman v. Western & Southern Life Ins. Co., 277 Ky. 551, 126 S. W. 2d 419. After an extended hearing the Board ruled that "the institution, establishment, business enterprise or nursing home conducted by the applicant is a profit-making venture and such use is not enumerated among uses permitted in the 'A,' 'B,' 'C,' and 'D' zoning districts." The Board, therefore, denied the permit. The circuit court, on appeal, Sec. 3037h-122, also denied the applicant any relief and confirmed the decision of the Board. The City of Louisville and several citizens who intervened in the case sought to enjoin the continued use of the premises, but the court refused an injunction. Miss Crain appeals here from the judgment adverse to her, and the city and citizens have filed separate appeals from the denial of the injunction. The three appeals have been consolidated and considered together.

The appellant's property is located in a "D" Apartment District as described in the zoning ordinance, which allows "any use permitted in the 'B' four-family district." The "Use Regulations" in that district are as follows:

"(1) Any use permitted in the 'A' One-Family District.

"(2) Two-Family Dwelling.

"(3) Multiple Dwelling with accommodations for not more than four families.

"(4) Group Houses.

"(5) Boarding and Lodging Houses.

"(6) Hospitals and Clinics, excepting veterinary hospitals and clinics.

"(7) Institutions of a philanthropic nature, other than those of a correctional nature.

"(8) Private Clubs, Fraternities, Sororities, Lodges, excepting those the chief activities of which is a service customarily carried on as a business."

The appellant maintains that she is conducting a hospital. The city and citizens lay emphasis upon the appellant having at various times and under different conditions, according to the exigencies, described her institution as a boarding house or a nursing home or a hospital. They maintain that a nursing home of the character which the appellant operates is not permitted by the ordinance and that it was a proper exercise of discretion by the Board in refusing a "variation" in order to allow it. The name by which the institution is designated or called is not of controlling importance. The question is to be determined by the activities or character of business or service, and not by the name, since the facts afford a difference of opinion as to which category it belongs.

Miss Crain is a registered professional and trained nurse of long experience. She was at one time head nurse at one of the largest hospitals in Louisville. She has two or three practical and experienced nurses at the home, at least one of whom with herself are on duty at all times. Other nurses are called in for special cases. Her patients are sent or referred to her by infirmaries and doctors, who visit them regularly as their own patients, and she has a house doctor retained for call in cases of emergency. Admittance is restricted to persons of culture and refinement, and is granted upon reference by a physician. Occasionally a patient is recommended by a church or welfare organization, but a doctor is assigned to such a case before or upon entrance. The capacity is limited, the number at the time of trial being twelve. The patients are persons who are infirm or ill, but not to such an extent as to require

the attention or services given at fully equipped hospitals. Some suffer from heart disease or paralysis, or afflictions and weakness incident to old age. Other than developments from senility, mental cases are not received. A substantial proportion of the patients are convalescents who need nursing and professional care while recuperating from serious illness or injuries or surgical operations performed at a general hospital. Some patients go there for minor operations, for which facilities are provided; others are there because of the need of special diet, or nasal or intravenous feeding. Each guest or patient is served on a tray in his or her room.

Perhaps "nursing home" is a very good and descriptive name for the institution, as the principal service is the nursing and care of guests or patients who are ill, in mind or body, but not seriously so, the surgical and medical service being minor or secondary, at least in extent and frequency.

It is to be noted that the ordinance permits use of property in this zone for either "boarding and lodging houses" or "hospital and clinics, excepting veterinary hospitals and clinics." The use of the appellant's property is nearer that of a hospital and the ordinance makes no difference in degree or kind of hospitals other than to exclude veterinary institutions. Several doctors gave testimony defining a hospital as an elaborate and fully equipped modern institution, a standard which the appellant's home does not meet, nor pretend to meet. Other doctors classified it as a private hospital, well equipped for the limited services undertaken or rendered. As used in the ordinance the word "hospital" must be given its common acceptation. The modern dictionaries thus define a hospital:

"An institution for the reception and treatment of the sick or injured; also, an institution or asylum for the reception of the insane, the aged or infirm, the disabled or paupers, etc; originally, any place of refuge for the helpless; as an army hospital; a county hospital; a detention hospital." Webster's Dictionary.

"Hospitals are of various kinds, according to the class of persons for whose reception they are intended; the majority being for persons suffering from some disease, or otherwise disabled from supporting themselves; some are for the reception of the aged and infirm, and others for the education of the children of persons in

reduced circumstances.'' International Encyclopaedia Dictionary.

The institution is like that described in Mayor & Council of Wilmington v. Turk, 14 Del. Ch. 392, 129 A. 512, 514, a nisi prius court. In that case it was sought to enjoin the operation of such a nursing home as violating a zoning ordinance. The court regarded it as a hospital and held—properly so, we think—that there is no distinction in this connection between a private and a public or charitable hospital. As such an institution, it was held to be a ''non-conforming use as defined by the ordinance.'' In the instant case the ordinance makes a hospital a conforming use in the particular zone. On the other side, the appellees cite Appeal of Halsey, 151 Pa. Super. 192, 30 A. 2d 187, 189, where the right to maintain a nursing home in a residential district was denied. The district was limited to certain classes of dwellings and ''church; etc., and accessory uses 'incident to any of the principal uses above listed and not involving the conduct of a business. * * *' '' A nursing home was held to be a business not permitted as accessory or incidental to the permissible uses. They also rely upon Frax Realty Company v. Kleinert, 123 Misc. 455, 205 N. Y. S. 728 (also an intermediate court), as holding that such an institution is not a hospital and is, therefore, not permitted in the zone on that theory. In that case the quesion was whether it was proper to allow the building of a large garage within 200 feet of a home for the aged, which, in turn, depended upon whether such an institution is a hospital. The court held—and we think properly so—that it was not such an institution. The difference between the cases is clear, it seems to us. Hospitals are permitted in the zone before us. Like courts, hospitals are relative—they differ greatly in kind and character. Thus, there is the Supreme Court of the United States on the one extreme and a court of a Justice of the Peace in a backward, rural community on the other. Each is a court. But whether appellant's institution be regarded strictly as a hospital or not, it has the attribute of both a hospital and a boarding and lodging house. While perhaps it could not be characterized as either exclusively, it is certainly something in between the two establishments and, as the ordinance permits use for either purpose, it must be construed as permitting use of an institution that is between the two in character, for the extremes include the mean.

We are committed to the sound principle that the court will not interfere with a decision of the Board of Adjustments and Appeals where a factual matter is involved unless it seems to have been abused. Fowler v. Obier, 224 Ky. 742, 7 S. W. 2d 219. But as there is no substantial conflict in the evidence as to the character of use to which the property is sought to be put, it is a matter of judicial construction. Too strict an interpretation in respect of the application to an asserted prohibited use ought not to be given a zoning ordinance, for our Kentucky Bill of Rights declares ''the right of acquiring and protecting property'' as one of the ''great and essential principles of liberty and free government'' and as an ''inherent and inalienable right.'' Sec. I. We are of opinion, therefore, the trial court should have held the nursing home to be a permissible use.

The appeals of the city of Louisville and James L. Smyser and other individual property owners present the additional question of a right to have the operation of the nursing home enjoined as a nuisance. The chancellor denied the injunction. The property is located in a high-class residential district, but nearby are two large homes for aged women and a sanatorium for alcoholics located on a large lot back of the residences fronting on Cherokee Road, reached by a court or narrow street. However, these were established before the zoning ordinance was adopted. It is alleged by these appellants, as intervening petitioners, that the presence and operation of the nursing home impairs the value of their property and the general welfare of the community. It is also alleged, and there is evidence to sustain the allegation, that the immediate neighbors have been disturbed by screams and noises emanating from the home, the appearance and visibility of occupants partially clothed at the windows, the sound of ambulance sirens bringing in patients and the depressing effect of carrying out of the dead. The prayer of the intervening petition is that the defendant and her employees ''be permanently enjoined and restrained from occupying, maintaining, operating or using the premises * * * except in compliance with said zoning law,'' and that its operation ''be declared unlawful under the zoning ordinance.'' Thus the basis of the injunctive relief sought is the violation of the zoning ordinance. Since, as we have determined, the establish-

ment and operation of the home is not prohibited by the terms of that ordinance, it follows that an injunction on that ground was properly denied. As stated in 39 Am. Jur., Nuisances, Section 11: "Generally, no act, erection, or use of property which is lawful or authorized by competent authority can be a nuisance per se, such as a business or occupation which is in itself lawful and can by care and precaution be conducted without danger or inconvenience to others; nor is property which may be and ordinarily is used for a lawful purpose a nuisance per se."

There is room for a difference of opinion as to whether the evidence of the absence of proper care and caution in the manner of operating the home or in the conduct of the patients was sufficient to constitute a nuisance in fact as distinguished from a nuisance per se. Of course, if on another proceeding it is proved that the method of operating the home or the conduct of the patients constitutes such a nuisance, there is an adequate remedy by injunction.

It follows, therefore, that on the first styled appeal, involving the application of the zoning ordinance, the judgment is reversed for consistent proceedings. The appeals of the city and citizens from the judgment denying an injunction are affirmed.

Whole Court sitting.