Carrollton A. Roberts, J.
The plaintiff brought this action to recover from the defendant insurance company the sum of $3,958.76, which represents 75% of the plaintiff’s expenses incurred during her confinement in the infirmary section of St. Ann’s Home for the Aged between February 1, 1963, and January 22, 1964.
The policy of insurance in question was issued to the plaintiff while she was employed and when she was 77 years of age.
On January 13, 1963, the plaintiff fell and fractured her hip. She was immediately hospitalized at St. Mary’s Hospital where she remained under the care of an orthopedic specialist until February 1,1963. She was completely incapacitated and was in need of and had nursing care around the clock. The defendant paid, under the terms of its policy, for her expenses for which defendant was liable while she was in St. Mary’s Hospital. On February 1, 1963, the plaintiff was confined to the infirmary section of St. Ann’s Home for the Aged, and continued there from that date until January 22,1964.
St. Ann’s Home for the Aged is a modern brick building, 10 stories in height, and is subdivided functionally into three areas —full infirmary, ambulant floor and area for intermediate care. Each floor comprises 46 beds with a core in the center of the building that houses not only the elevators and stairways, but a nursing unit from which the charge nurse on the floor performs her duties. There are subnursing units in each of the wings and a utility room. The rooms are primarily private rooms, although there were two double rooms on each floor. The entire building contains 354 patient rooms of which 165 are infirmary beds. The building also contains a lobby, administrative offices, private offices for the doctors, and kitchen facilities.
There is a medical wing which comprises an operating room, X-ray suite, a laboratory, a dental suite, a physical medicine suite and an eye room. There is also a room used by urologists and podiatrists.
The hospital is staffed by sisters of the Catholic Diocese most of whom are registered nurses, and the home also employs lay nurses. There is a sister who is Director of Nursing, and sisters who are nursing supervisors and staff nurses, as well as nurse’s aides. Lay people are also employed in these various duties. The sisters reside on the tenth floor of the home and provide 24-hour nursing service and care for the patients.
The infirmary section of the home comprises four floors, each of the rooms contains a hospital-type bed, bedside stand, a floor light, a dresser, a chair and toilet facilities. Each of the rooms *778 is also equipped with a light-button call system which lights a signal in the nursing station and summons the nurses to the patient’s room.
As part of the infirmary section there is an acute medical room for any of the patients who are acutely ill and require intensive nursing care and supervision.
The health and accident policy issued to the plaintiff provides : “ PART A. The term ‘ hospital ’, means a place, other than a convalescent, nursing or rest home, having accommodations for resident bed patients, a laboratory, a registered nurse always on duty and an operating room where surgical operations are performed by legally qualified physician or physicians.”
The sole issue to be determined is whether or not St. Ann’s Home for the Aged, in which the plaintiff was confined is a “ hospital ” as defined in PART A of the policy.
The defendant concedes that if St. Ann’s Home for the Aged is a hospital falling within the scope of the definition as contained in the policy, then the plaintiff is entitled to recover from the defendant for hospital room and board and other hospital furnished medical services and supplies under the provisions of PART C of the policy.
In order to determine the rights and liabilities of the parties under the policy, it is first necessary to determine whether or not there is an ambiguity in the wording of PART A of the policy.
The policy excludes convalescent, nursing or rest homes, and does not exclude a home for the aged. The policy contains a specific definition of the word “ hospital ”, but does not contain any specific definition of the words ‘ ‘ convalescent, nursing or rest home.”
The words “ convalescent, nursing or rest home ” contained in the exelusory clause are very broad terms. Facilities exist in this State and in other States which provide a wide variety of medical, surgical, hospital and nursing services to the public. What one person may consider a hospital may indeed be considered by others to be a convalescent home. On the other hand, what others may consider to be a convalescent or nursing home might provide more hospital facilities and services than some institutions which are called hospitals.
We are in an age of constantly expanding and more completely equipped institutions for the care of the sick, the infirm and the aged. The institution in this case is a home for the aged, but it is not such a home as one might always associate with an old-age home. It is a large, modern, superbly equipped and staffed medical facility. In fact, it is so well equipped and so well staffed that it meets each and every one of the standards speci *779 lied by the insurer as being necessary to constitute a hospital by its own definition contained in PART A of the policy.
The terms ‘ ‘ convalescent home “ nursing home ”, or ” rest home ’ ’, are, under varying circumstances, capable of more than one meaning. Whether or not a building or home or hospital is or is not a convalescent, nursing or rest home depends upon the facilities and services provided in each instance.
The insurer in this case by its policy sought to exclude from coverage convalescent, nursing or rest homes. The insurer, however, did not give any specific definition of these terms. The result is that the term 1 ‘ hospital ’ ’ as defined in the policy is clearly unambiguous, but the terms of exclusion are general, broad and capable of more than one meaning or definition.
This doubt, or ambiguity in the meaning of the exclusory clause of the policy, must, of course, be resolved in favor of the insured. The burden is on the defendant insurer to establish that one of the terms “ convalescent ”, “ nursing ” or “ rest home ’ ’ is susceptible of being defined by an average man so as to exclude St. Ann’s Home for the Aged as being such an institution. But further, the defendant has the burden of establishing that such a definition of one of these terms is the only one that could be fairly placed thereon. (Bronx Sav. Bank v. Weigandt, 1 N Y 2d 545.) It is not sufficient for the defendant to demonstrate that the plaintiff purchaser of the policy, or a physician or a hospital administrator might construe or might have construed the terms “ convalescent, nursing or rest home ” to include an institution such as St. Ann’s Home for the Aged. The defendant, to derive any benefit from the exclusory clause, was obliged to show: (1) that it would be unreasonable for the average man reading the policy to conclude that St. Ann’s Home for the Aged was anything but a convalescent, nursing or rest home; and, (2) that its own construction of these terms was the only one that could be fairly placed thereon.
The defendant has not sustained this burden. Where there is an ambiguity in an exclusory clause such as this, the rule that such ambiguity must be resolved in favor of the insured has particular application. (Sincoff v. Liberty Mut. Fire Ins. Co., 11 NY 2d 386; Shneiderman v. Metropolitan Cas. Co. of N. Y., 14 A D 2d 284 [1st Dept.].)
The insurer writing health and accident policies is presumed to have been acquainted with the risks relating to its coverage, and also with the type of institution that would normally be rendering care and treatment to its insureds and what type of facilities and services these institutions provide. (Sincoff v. Liberty Mut. Fire Ins. Co., supra).
*780 The insurer in this case pointed out very clearly on the trial of this action what facilities hospitals normally have and the standards which are required. If this information had been reduced to writing and made a part of PART A of the policy, there would have been no ambiguity, and consequently no issue to be litigated.
The defendant urges further that St. Ann’s Home for the Aged is not a hospital under the provisions of PART A of the policy because St. Ann’s Home was not established as a “ hospital,” but as a home for aged men and women; that St. Ann’s Home had a plan for affiliation with Rochester General Hospital to provide its patients with any hospital care they needed and that traditionally a hospital is an institution for the reception, care and treatment of the sick and wounded.
The rights and obligations under the terms of the policy must be determined by the terms of the policy itself and not by the characterization which may be placed upon such terms by the parties. What the parties intended and what they may now say they intended as to the meaning of the words contained in the policy can only be determined to the extent that such intention is evidenced by what is written in the policy itself. (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442, 450.)
It may very well be that the insurer in the issuance of this policy intended to exclude from coverage a facility such as St. Ann’s Home for the Aged and to include only a hospital which has all of the facilities necessary for medical and surgical treatment of patients. However, the insurer in its policy clearly defined in PART A thereof exactly what facilities an institution must have and what services it must provide in order to constitute a hospital under the policy terms, and did not in such definition create any requirement that the place where the insured was to be confined must contain each and every hospital facility and service.
The insurer is bound by the terms of its own policy. St. Ann’s Home for the Aged has the facilities defined in the policy, all of those facilities and services, and therefore, is a hospital within the insurer’s own definition even though it may not be considered a hospital in the medically accepted usage of the term.
The insurer further urges that even if St. Ann’s Home for the Aged has some of the facilities set forth in PART A of the policy, it still is not a hosptial under its definition thereof because the operating room at St. Ann’s does not have equipment for general anesthesia, proper specialized lighting, or non *781 conducting floors. The defendant called a physician as an expert witness and posed to him a question based upon a hypothesis and upon hearsay, and asked him if he had an opinion as to whether or not the room or equipment set forth in the hypothesis could constitute an operating room as the same exists in this area. The objections to the question and all similar questions seeking to elicit an opinion from the doctor as to whether or not this particular room constituted an operating room were sustained. This was on the authority of Dougherty v. Milliken (163 N. Y. 527, 533) upon the theory that the answer sought to be elicited was the precise question that should have been determined by the trial court as a question of fact, and that the proper method of introducing this type of evidence would have been that the expert present what they had or did not have at St. Ann’s Home by way of facilities and the court would then draw its own conclusions and decide whether or not the room was an operating room within the definition contained in the policy.
The policy does not state that the operating room specified therein must be an operating room for the performance of each and every kind of major surgery under general anesthesia (although some major surgery was performed at St. Ann’s Home), and in fact, the policy does not provide that the operating room must contain any specific facilities. The only requirement set forth therein is that the operations be performed by legally qualified physician or physicians. There is no question in this case that all operations performed at St. Ann’s Home for the Aged were performed by legally qualified physicians.
Whether a facility is called a hospital or not is not germane to the point. I find that St. Ann’s Home for the Aged, the institution in which the plaintiff here was confined does meet each and every one of the standards set forth in the defendant’s policy. (Halper v. Ætna Nat. Life of Hartford, Conn., 42 Misc 2d 184, 190, affd. 44 Misc 2d 437, affd. 24 A D 2d 703.)
If the insurer specifically wished to exclude a home for the aged regardless of what facilities such a home may contain, it could easily have so stated. If the company wished to exclude all institutions except those which provided each and every hospital facility and service, then the insurer could have easily so stated in its policy. (Greaves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120, 125.)
If the insurer intended that its risk should not cover an institution which under ordinary circumstances might he deemed a *782 convalescent, nursing or rest home, hut in fact did have the. facilities and services delineated in the policy, it should have said so in clear, unmistakable terms so that no one could be misled. (Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y., 305, 312.)
The rule is well settled that the language used in an insurance contract must be given its ordinary meaning — 'the meaning which the average policyholder of ordinary intelligence, as well as the insurer, would attach to it. If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known. (Baldinger v. Consolidated Mut. Ins. Co., 15 A D 2d 526, affd. 11 N Y 2d 1026.)