Argued October 12, reversed and remanded November 30, 1972

CULLOP, *Respondent, v.* ROGUE VALLEY
PHYSICIANS' SERVICE, INC., *Appellant.*

503 P2d 699

*Gene L. Brown,* Grants Pass, argued the cause and
filed the briefs for appellant.

*Ronald L. Salter,* Ashland, argued the cause and filed the brief for respondent.

HOWELL, J.

Plaintiff, a beneficiary of an insurance policy issued by defendant, brought this action to recover certain expenses incurred by her while a patient at the Rehabilitation Institute of Oregon. The case was presented on stipulated facts and the trial court, sitting without a jury, found for plaintiff. Defendant appeals.

Subsequent to an amputation of her leg at a hospital in Ashland, Oregon, plaintiff was treated at the Rehabilitation Institute of Oregon in Portland for approximately three months. The care she received at the Institute consisted of "stump conditioning, gait training, and observation."

The defendant's policy states that "the benefits of this contract shall be provided only by approved hospitals and participating physicians * * *."

An "approved hospital" is defined in the policy as:

"* * * a hospital that is accredited and licensed to do business under the regulations of the Oregon State Board of Health, and is satisfactory to R.V.P.S. [the defendant]."

The only question presented is whether the Rehabilitation Institute of Oregon qualifies as a hospital under the above definition.

The regulations of the Oregon State Board of Health applicable to this case were adopted by the Board on May 25, 1966, and became effective May 26, 1966. For the purpose of the rules, the institutions in-

volved have been categorized in different classifications ranging from various types of hospitals and "facilities" (such as chiropractic facilities and those for the treatment of alcoholism), to college infirmaries, rehabilitation centers, and nursing homes.[1]

Regulation 23-114 defines a "hospital" and an "institution" as follows:

"23-114 DEFINITIONS. (1) 'Hospital' means any institution devoted primarily to the rendering of healing, curing, and nursing care, or healing, curing, or nursing care, which maintains and operates facilities for the diagnosis, treatment and care of two or more nonrelated individuals suffering from illness, injury, or deformity, or where obstetrical or other healing, curing, or nursing care is rendered over a period exceeding 24 hours.

"(2) 'Institution' means either a hospital or related institution as the context may indicate."

It is conceded herein that the Center was li-

---

[1] Regulation 23-124 provides:

"23-124 CLASSIFICATION (1) For the purpose of these Rules, each institution within the provisions of the Hospital Licensing Law is placed within one of the following classes and sub-classes:

"(a) General Hospitals

"(b) Intermediate General Hospitals

"(c) Special Hospitals
    (A) Convalescent Hospitals
    (B) Maternity Hospitals
    (C) Mental Hospitals
    (D) Orthopedic Hospitals
    (E) Tuberculosis Hospitals
    (F) Geriatric and/or Chronic Disease Hospitals

"(d) Facilities
    (A) Chiropractic Facilities
    (B) Facilities for the Treatment of Alcoholism
    (C) College Infirmary
    (D) Rehabilitation Center
    (E) Community Health Facility

"(e) Nursing Homes"

censed as a rehabilitation center, and that an application by the Center to be licensed as a convalescent hospital was rejected.

The plaintiff contends that the services rendered and the treatment received by her at the Rehabilitation Center constituted "healing, curing, or nursing care" within the definition of a hospital as contained in Regulation 23-114 above.

According to plaintiff, as the Rehabilitation Center was licensed *under* the regulations of the State Board of Health and the services received by plaintiff constituted "healing, curing, or nursing care," the Rehabilitation Center qualified as a hospital.

As we read the policy definition of an approved hospital as being a hospital "accredited and licensed to do business under the regulations of the Oregon State Board of Health," it requires that the particular institution providing the care and treatment be licensed as a hospital. Defendant was not licensed as a hospital; it was licensed as a rehabilitation center. A reading of all the regulations relating to the qualifications and licensing of hospitals and the other institutions indicates that the State Board of Health recognized distinctions between the different types of institutions. Regulation 23-124 contains a list of the various types of hospitals plus other institutions which are subject to the rules and regulations of the Board. Numerous detailed qualifications and rules of operation are set forth for each type of hospital or institution mentioned. The rules governing a college infirmary or a rehabilitation center are vastly different from those for a convalescent hospital or for a general or intermediate hospital.

If we accepted plaintiff's position, then any of the other institutions subject to the supervision of the State Board of Health would constitute an "approved hospital" under the definition contained in defendant's policy. Thus, for example, a college infirmary, although licensed as an infirmary and not a hospital, would be an "approved hospital." We reject this construction.

We have examined the cases cited by plaintiff,[2] and none of them contain a definition similar to the instant case, requiring the hospital be accredited and licensed as a hospital.

Reversed and remanded with directions to enter a judgment for defendant.

---

[2] Dungan v. Travelers Insurance Co., 257 Or 511, 476 P2d 915 (1970), 480 P2d 418 (1971); Reserve Life Ins. Co. v. Marr, 254 F2d 289 (9th Cir 1958), cert den 358 US 839, 79 S Ct 63, 3 L Ed 2d 74 (1958); Travelers Insurance Company v. Esposito, 171 So 2d 177 (Fla App 1965); McKinney v. American Sec. Life Ins. Co., 76 So 2d 630 (La App 1954); Connors v. Mutual Benefit Health & Accident Ass'n, 49 Misc 2d 776, 268 NYS2d 154 (1966), aff'd 27 AD2d 704, 279 NYS2d 1020 (1967); Meyers v. Aetna Life Ins. Co., 207 Pa Super 526, 218 A2d 851 (1966); National Bankers Life Ins. Co. v. Hornbeak, 266 SW2d 228 (Tex Civ App 1954).