ARTHUR BOHLEBER *et al.*, Plaintiffs-Appellants, *v.* CARMI TOWNSHIP HOSPITAL *et al.*, Defendants-Appellees.

(No. 74-290; ▮▮▮▮▮▮▮

Fifth District—July 22, 1975.

George W. Woodcock, of Woodcock & Hux, of Mt. Carmel, and David L. Stanley, of Carmi, for appellants.

John C. Parkhurst, of Leiter, Newlin, Fraser, Parkhurst & McCord, of Peoria, for appellee Lexington House Franchise Co.

Craig & Craig, of Mt. Vernon, and Conger & Elliott, of Carmi, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a summary decree of the White County Circuit Court dismissing plaintiffs' amended complaint and holding that Carmi Township Hospital does have the authority to construct and operate a nursing home and that said hospital did have authority to contract without calling for competitive bids. The ruling of the circuit court that plaintiffs had standing as taxpayers is not challenged on appeal.

Carmi Township Hospital entered into a contract with Lexington House Franchise Co. on December 6, 1972, for the construction of a nursing care facility adjoining the hospital. Plaintiffs-appellants Arthur Bohleber and Stanley B. Abelson, as residents and taxpayers of Carmi Township, filed suit in February 1973, after construction had commenced, seeking to void the contract and restrain the hospital from operating the nursing home unit. Named as defendants were the hospital, its board of directors, and Lexington House Franchise Co. Since the suit was filed construction has been completed and the nursing home, which is connected to the hospital by a corridor, is now operating under the hospital administration. The nursing home was originally licensed under the Nursing homes, sheltered care homes, and homes for the aged Act (Ill. Rev. Stat. 1973, ch. 111½ § 35.16 et seq.), but is now licensed under the Hospital Licensing Act (Ill. Rev. Stat. 1973, ch. 111½, § 142 et seq.).

The first issue raised by plaintiffs-appellants is whether Carmi Township Hospital had the legal authority to construct and operate a nursing facility. We hold in the affirmative. The statutory authority under which the hospital was originally established and on which defendants rely for the construction and operation of the nursing home is the township hospital act (Ill. Rev. Stat. 1973, ch. 139, §§ 160.6—160.16), which provides in part:

"§ 1. Any town having a population of less than 500,000 is authorized to establish, acquire by purchase or otherwise, construct, improve, extend, repair, equip, maintain and operate a public hospital in and for said town, as in this Act provided.

\* \* \*

§ 6. The Board of Directors constitute the governing body of

the public hospital and are the corporate authorities of said town for that purpose and constitute a body corporate and politic separate and distinct from other officers of the town. The Board of Directors shall exercise all the powers and manage and control all of the affairs and property of the public hospital * * *."

Construing section 1 (par. 160.6) in conjunction with section 6 (par. 160.11), the authority of the township extends only to the establishment of a public hospital (by election, par. 160.7) and the board of directors is to exercise the remaining powers, *i.e.*, of acquiring, constructing, improving, extending, repairing, equiping, maintaining, and operating, the hospital. Thus, the issue here is whether the board of directors of a township hospital has the authority to "improve" and "extend" said hospital by constructing an adjoining nursing care facility. We are not faced with the question whether a township has the authority to "establish" a separate nursing home.

As a general proposition the definition of "hospital" would include a nursing home. Black's Law Dictionary (4th ed. 1951) defines "hospital" as "An institution for the reception and care of sick, wounded, infirm, or aged persons." (Accord, 41 C.J.S. *Hospitals* § 1 (1944); 21 Ill. L. & Pr. *Hospitals* 109 (1956); 40 Am. Jur. 2d *Hospitals and Asylums* § 1 (1968).) Defendants cite numerous cases from other jurisdictions construing in various contexts the word "hospital" to include a nursing home. (*McNichols v. City & County of Denver*, 120 Colo. 380, 209 P.2d 910 (1949) (bond issue); *Crain v. City of Louisville*, 298 Ky. 421, 182 S.W.2d 787 (1944) (zoning law); *McKinney v. American Security Life Insurance Co.*, 76 So.2d 630 (La. App. 1954) (insurance policy); *Kew Gardens Sanitarium, Inc. v. Wyman*, 41 Misc. 2d 90, 244 N.Y.S. 2d 761 (Sup. Ct. Queens County 1963) (certificate of incorporation); *Connors v. Mutual Benefit Health & Accident Association*, 49 Misc. 2d 776, 268 N.Y.S. 2d 154 (Monroe County Ct. 1966) (insurance policy); *St. Vincent's Nursing Home v. Department of Labor*, 169 N.W.2d 456 (N.D. 1969) (state Labor Management Relations Act); *Appeal of Ferguson*, 54 Mun. 179 (Pa. 1962) (zoning law).) With respect to the coverage of hospitalization insurance policies for nursing home care, see Annot., 46 A.L.R. 3d 1244 (1972). The only Illinois case cited by the parties dealing with the definition of "hospital" is *Bennett v. Bennett*, 27 Ill.App.2d 24, 30, holding that services provided in a State mental hospital ("caring for, treating, detaining and training") were necessaries, and that a husband was liable to his wife's estate for payment therefor. The court stated that the wife was in a hospital, as the term is commonly understood. A hospital is a place for the care of the sick whether in mind or body. Thus, *Bennett* stands for a broad definition of the word "hospital."

■■ This case must be resolved, however, according to the legislative intent. "The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and meaning of the words, enlarged or restricted according to their real intent." (*Warner v. King,* 267 Ill. 82, 87.) The parties cite various examples of both broad and narrow constructions of the powers of municipal corporations, but agree on the general principles that a municipal corporation may only exercise the powers delegated to it by the legislature and that statutes granting such powers are strictly construed, that any fair and reasonable doubt of the existence of a power is resolved against the municipal corporation, and that implied powers are only those necessarily incident to express powers. (*City of Bloomington v. Wirrick,* 381 Ill. 347.) But, "necessarily incident" does not mean "absolutely indispensible" (*People ex rel. Sweitzer v. City of Chicago,* 363 Ill. 409), and "strict construction" does not connote "the narrowest possible meaning" (*Franklin County Coal Co. v. Ames,* 359 Ill. 178).

The power relied upon by defendants is granted in broad terms to the board of directors, a municipal corporation, to "improve" and "extend" the hospital. (Ill. Rev. Stat. 1973, ch. 139, §§ 160.6, 160.11.) Plaintiffs do not argue that the addition of nursing facilities does not improve or extend the hospital, but point to various legislative distinctions between hospitals and nursing homes.

Plaintiffs argue that since a township is given the specific authority to lease a nursing home from a county (Ill. Rev. Stat. 1973, ch. 139, §§ 160.29, 160.30), it does not have the authority to construct one. But we are not dealing here with a township's power to establish or acquire a nursing home, we are dealing with the scope of a township hospital's power of improvement or expansion.

The court is also aware that counties are given separate powers for the establishment of hospitals (Ill. Rev. Stat. 1973, ch. 34, §§ 501 *et seq.,* 5351 *et seq.*), and for the establishment of nursing homes (Ill. Rev. Stat. 1973, ch. 34, §§ 3561 *et seq.,* 5361 *et seq.*). But nowhere is a nursing home precluded from providing some medical care, nor is a hospital precluded from providing some nursing care. In fact, the provisions enabling a township to lease a nursing home from a county authorize the lease of "a county home, infirmary or *hospital*" (emphasis supplied) operating under the County Home Act (Ill. Rev. Stat. 1973, ch. 34, § 5361 *et seq.*). Ill. Rev. Stat. 1973, ch. 139, § 160.29.

Plaintiffs also point out the distinction between hospitals and nursing homes in the respective licensing statutes. Section 3 of the Hospital Licensing Act (Ill. Rev. Stat. 1973, ch. 111½, § 144), provides in part:
"A. 'Hospital' means any institution * * * *devoted primarily*

to the maintenance and operation of facilities for the diagnosis and *treatment or care* of two or more unrelated persons admitted for overnight stay or longer in order to obtain medical, *including* obstetric, psychiatric and *nursing,* care of illness, disease, injury, *infirmity,* or deformity.

\* \* \*

The term 'Hospital' does not include (1) any \* \* \* institution required to be licensed pursuant to [Ill. Rev. Stat. 1973, ch. 111½, § 35.16 *et seq.*]." (Emphasis added.)

And the Nursing homes, sheltered care homes, and homes for the aged Act (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16) defines "nursing home" as an institution "which provides \* \* \* maintenance, personal care, or nursing." That section further provides that the term "nursing home" does not include an institution "which is required to be licensed under the 'Hospital Licensing Act.' "

The limiting phrases in each definition ("does not include \* \* \*") indicate legislative awareness of the overlap of the definitions: that hospitals do provide some nursing care, and nursing homes, some medical care. The emphasized language in the definition of "hospital," above, provides further support for the notion of overlapping functions and shows that the operation of the nursing home in this case under a hospital license is within the legislative intent.

■■ The Board of Directors of Carmi Township Hospital has been granted powers in nonspecific terms. We are asked to decide whether the construction and operation of a nursing care facility as part of said hospital is within the board's powers. The general definitions and authorities from foreign jurisdictions suggest that a nursing home is a hospital. Several Illinois statutes on their face indicate a sharp distinction, but upon closer analysis evince overlapping functions and a general acceptance of nursing facilities as a part of a hospital. We are not unaware, moreover, of widespread deficiencies in nursing home care that have been uncovered in recent years (see Wilson, Nursing Home Law Handbook (National Senior Citizens Law Center 1975); Nursing Home Care in the United States: Failure in Public Policy (Special Committee on Aging, U.S. Senate 1974) ), and of the value in operating a nursing unit as a wing of a public hospital. Such a combination facilitates the often difficult transfer of patients who no longer require intensive medical treatment or surgery, while providing easy access to such care if the need should arise. It is for all of the foregoing reasons that we affirm the holding of the circuit court that Carmi Township Hospital has the authority to construct and operate a nursing home in conjunction with its hospital.

■■ The second issue raised by plaintiffs is whether Carmi Township

Hospital had the authority to enter into the construction contract without competitive bidding. Plaintiffs contend that "An Act relating to township purchasing" (Ill. Rev. Stat. 1973, ch. 139, par. 191) requires competitive bidding. But defendants argue, and we agree, that that Act applies by its terms only to "Any purchase by a township." As we have previously noted Carmi Township Hospital is not governed by or a part of Carmi Township, but is a separate municipal corporation. (Ill. Rev. Stat. 1973, ch. 139, par. 160.11.) "In the absence of some statutory provision, competitive bidding is not an essential prerequisite to the validity of contracts by and with public bodies." *People ex rel. Adamowski v. Daley*, 22 Ill. App.2d 87, 91.

The summary decree of the Circuit Court of White County dismissing plaintiffs' amended complaint, is affirmed.

Affirmed.

EBERSPACHER and KARNS, JJ., concur.