UNITED STATES of America,
Plaintiff,

v.

CONTINENTAL CAN COMPANY, Inc.
and Hazel-Atlas Glass Company,
Defendants.

United States District Court
S. D. New York.
July 14, 1958.

---

William H. McManus and John M. O'Donnell, Washington, D. C., for plaintiff.

Willkie, Farr, Gallagher, Walton & Fitz Gibbon, New York City, for defendant Continental Can Co., Inc. Mark F. Hughes, Helmer R. Johnson, New York City, of counsel.

SUGARMAN, District Judge.

"The United States of America by its attorneys, acting under the direction of the Attorney General of the United States" brought suit on September 10, 1956 against Continental Can Company, Inc., and Hazel-Atlas Glass Company for a decree that the acquisition of Hazel-Atlas by Continental violated § 7 of the Clayton Act.[1]

The complaint alleged *inter alia* that Continental is the second largest manufacturer of metal cans, the fourth largest seller of plastic squeeze bottles, the second largest producer of crown caps and the second largest manufacturer of metal closures. It also alleged that Hazel-Atlas is the largest manufacturer of wide mouth glass bottles, the second largest manufacturer of all glass bottles and a manufacturer and seller of screw type metal closures. It further alleged that makers of a variety of products packing their wares in metal cans, plastic bottles and glass bottles and using metal closures have a choice of the type of containers they use and that Continental's metal cans, plastic bottles and metal closures

---

1. 15 U.S.C.A. § 18.

compete for this market with Hazel-Atlas' glass bottles and metal closures. It is further alleged that Continental's acquisition of Hazel-Atlas will eliminate or substantially lessen that competition and tend to monopolize the field.

Continental served interrogatories upon plaintiff which objected to some of them and noticed its objections for argument. The objections may be grouped into six classes: I. Those seeking information to show Continental's and Hazel-Atlas' relative status in the metal can, plastic bottle, glass bottle, wide mouth glass bottle, crown cap and metal closure industries where each defendant is so engaged. II. The amount of products packed in metal cans and plastic and glass bottles and the use of closures made by Continental and Hazel-Atlas. III. Capacities, production and cost data in the glass container field similar to that heretofore supplied by defendants in answering plaintiff's interrogatories pursuant to an earlier order of this court. IV. Data re use of raw materials in glass container making similar to that heretofore supplied by defendants in answering plaintiff's interrogatories pursuant to said earlier order of this court. V. Those seeking what plaintiff characterizes as "legal conclusions, opinions and contentions." VI. Those seeking what plaintiff charges is the detail of evidence by which plaintiff will prove the alleged violation of § 7 of the Clayton Act.

## I.

Interrogatories 6(a), 7(a), 8, 9, 15(a) and 16(a) each in relation to an allegation of the complaint seek:

| Complaint | Interrogatory |
|---|---|
| Continental is the second largest manufacturer of metal cans. | ▬ The names, addresses and sales volume (in dollars and units) of the largest and third largest manufacturer of metal cans. |
| Continental is the fourth largest domestic company in the sale of plastic squeeze bottles. | ▬ The names, addresses and sales volume (in dollars and units) of the largest and second, third and fifth largest manufacturers of plastic bottles. |
| Hazel-Atlas is the second largest manufacturer of all glass bottles. | ▬ The names, addresses and sales volume (in dollars and units) of the largest and third largest manufacturer of all glass bottles. |
| Hazel-Atlas is the largest manufacturer of wide mouth glass bottles. | ▬ The names, addresses and sales volume (in dollars and units) of the second largest manufacturer of wide mouth glass bottles. |

Continental is the second largest producer of crown caps.

The names, addresses and sales volume (in dollars and units) of the largest and third largest manufacturer of crown caps.

Continental is the second largest producer of metal closures.

The names, addresses and sales volume (in dollars and units) of the largest and third largest manufacturer of metal closures.

## II.

Interrogatories 13 and 18 each in relation to an allegation of the complaint seek:

Complaint

Interrogatory

A wide variety of products are packaged in metal cans, plastic and glass bottles by manufacturers who have and exercise a choice of either or all types of packing containers.

The names, addresses and volume (in dollars and units of each product) of the manufacturers and processors using metal cans, plastic bottles and glass bottles.

Hazel-Atlas makes screw type metal closures for sealing a variety of products in glass bottles. Manufacturers and processors of these products have a choice of the type of closure they will use.

The names, addresses and volume (in dollars and units of each product) of the manufacturers and processors using closures of the types produced by each defendant.

## III.

Interrogatories 32, 33, 34, 35 and 36 seek data as to the capacities, production and cost in the glass container industry similar to that supplied by defendant Hazel-Atlas in answering plaintiff's interrogatories.

## IV.

Interrogatory 37(b) seeks data as to raw materials used in the glass container industry similar to that supplied by defendant Hazel-Atlas in answering plaintiff's interrogatories.

———◆———

The plaintiff's objections to answering the defendant's interrogatories in the first four groups is that giving the information sought would require disclosure of information gathered by the Federal Bureau of Investigation, in violation of regulations of the Attorney General who directed that this suit be brought. The regulations cited are Department of Justice Order 3229 (May 2.

1939) ;[2] Supplement No. 2 to said Order 3229 (June 6, 1947)[3] and Order No. 3229, Revised (March 9, 1953)[4] all promulgated under Rev.Stat. § 161.[5]

At the outset it should be noted that, although plaintiff relies on all of the Attorney General's regulations cited, the earlier ones were specifically "revoked" by the last[6] and therefore consideration will be given only to the last.

Technically, this regulation does not cover the situation here presented, i.e., disclosure by answers to interrogatories of "privileged" documents, materials or information. It rather contemplates an appearance at a trial, or hearing and the assertion to the court of the claimed privilege against the giving of evidence. However, no gainful purpose will be achieved by giving the regulation a narrow construction as to the type of proceeding to which it applies and the propriety of resting objections to interrogatories upon it will be assumed although text writers have classified the two in different but interrelated categories.[7]

The case at bar is one where the government is a plaintiff in discharge of its regulatory function of enforcing the antitrust laws and whether the information sought is privileged must be examined in that context.[8]

There can be little doubt that if the plaintiff is to ultimately succeed in this suit it will, at the trial, have to establish the facts now sought by defendants. They thus become the appropriate subjects of interrogatories.[9]

It must be realized that we have here an asserted "privilege" created by the agency prosecuting the suit and not one created by Congress.[10]

There is ample authority for the belief that, regardless of the extent of the privilege when strangers seek to pry open the government's files for private benefit, once the government itself comes into court as a party, even in the performance of a regulatory function, it waives the privilege, if any it had.[11]

Aside from waiver of the purported privilege I doubt that any privilege exists under the facts here presented. The basis for the claimed privilege is a "public policy" that purportedly requires that the identity of informants and information given in confidence to the Federal Bureau of Investigation be concealed. It is urged that disclosure will impair the effectiveness of the Federal Bureau of

2. Pike & Fischer Ad.L. (2nd ser.) (Agency Rules) Department of Justice 1.

3. See note 2, supra.

4. 18 Fed.Reg. 1368.

5. 5 U.S.C.A. § 22.

6. See note 4, supra.

7. 3 Vanderbilt Law Rev. 73, 74; 4 Moore's Fed.Prac. (3rd ed.) 1160.

8. 4 Moore's Fed.Prac. (3rd ed.) 1170.

9. F.R.Civ.P., rules 33 and 26(b), 28 U.S. C.A.

10. Cf. United States v. Bethlehem Steel Corp., D.C.S.D.N.Y.1958, 21 F.R.D. 568.

11. Fleming v. Bernardi, D.C.N.D.Ohio 1941, 1 F.R.D. 624; Brewer v. Hassett, D.C.Mass.1942, 2 F.R.D. 222; United States v. General Motors Corp., D.C.N.D. Ill.1942, 2 F.R.D. 528; Bowles v. Ackerman, D.C.S.D.N.Y.1945, 4 F.R.D. 260; Walling v. Richmond Screw Anchor Co., Inc., D.C.E.D.N.Y.1943, 4 F.R.D. 265.

To the extent that Walling v. Comet Carriers, Inc., D.C.S.D.N.Y.1944, 3 F.R.D. 442, which dealt with discovery of documents under F.R.Civ.P. rule 34, might appear to the contrary (although a distinction from Fleming v. Bernardi, supra, is attempted) I decline to follow it. More so because of Walling v. Richmond Screw Anchor Co., Inc., D.C.E.D. N.Y.1943, 4 F.R.D. 265, which also dealt with discovery of documents under F.R. Civ.P. rule 34 and allowed the discovery because "this information might be obtained under Rule 33 of the Federal Rules of Civil Procedure * * *" (4 F.R.D. at page 269).

Investigation and silence those who otherwise might speak, out of fear of economic retribution. The answer is supplied in Walling v. Richmond Screw Anchor Co.[12]

Respected authority [13] forcefully argues for a sharp restriction of the privilege when it is asserted at a trial. If, as here, the privilege if asserted is to be rejected at the trial, there can be no cogent reason to respect it during pre-trial proceedings seeking precisely the same information in preparation for the trial.

Under the regulation which the plaintiff offers as a shield[14] there is impliedly reserved to the Attorney General the right to determine whether the "privilege" will be asserted. This being a ruling on plaintiff's objections to defendant's interrogatories and no "subpoena or order" being as yet here involved the opportunity will be accorded the Attorney General to make that determination.[15]

The objections to interrogatories 6(a), 7(a), 8, 9, 13, 15(a), 16(a), 18, 32, 33, 34, 35, 36 and 37(b) are overruled. The answers will be served and filed within such time as counsel for the parties stipulate in writing.

Upon proof by affidavit of failure of compliance herewith an application for dismissal of the plaintiff's complaint pursuant to F.R.Civ.P. rule 37(d) will be entertained *ex parte*.

## V.

██ Interrogatories 23(a), (b), 28, 29, 30 and 31 each in relation to an allegation of the complaint seek:

| Complaint | Interrogatory |
|---|---|
| The effect of the acquisition of Hazel-Atlas by Continental "may be substantially to lessen competition, or to tend to create a monoply, in violation of Section 7 of the Clayton Act, among other ways, as follows:" | ██ ██ ██ What advantage the combined defendants might have over competitors of each defendant; their names, the line of commerce and section of the country where they are in competition; and how the advantage will lessen competition or tend to create a monopoly. |
| There then are listed seven ways in general terms as to how the prohibited effects may result. | ██ Each line of commerce and product in which competition may be lessened by Continental's acquisition of Hazel-Atlas. |
| | ██ Each section of the country in which competition may be lessened by such acquisition. |

12. D.C.E.D.N.Y.1943, 4 F.R.D. 265, 269.
Upon a claim that disclosure of the identity of informants and information given to the Wage and Hour Division would affect the functioning of the Division because other employees and complainants might be loath to make complaints of violations of the Act it was observed: "If such information is required upon the trial, can there be any harm in plaintiff supplying such information in advance of the trial? It seems not."
13. Wigmore, Evidence (3rd ed.) §§ 2378, 2379.
14. 18 Fed.Reg. 1368.
15. United States v. Cotton Valley Operators Committee, D.C.W.D.La.1949, 9 F.R.D. 719, affirmed by a divided court 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356.

■ Each line of commerce and product in which the acquisition may tend to create a monopoly.

■ Each section of the country in which the acquisition may tend to create a monopoly.

———◆———

The plaintiff's objection to the fifth group is that "it is not the function of interrogatories to elicit opinions or conclusions of law or legal contentions of counsel." While it is quite true that the court after a full trial will have to decide these issues, that does not preclude the disclosure before trial of the plaintiff's contentions thereon.[16] If, as plaintiff concedes, the disclosures will have to be made at the pre-trial conference, there is no reasonable basis for their concealment from defendants in preparation to meet the broad issues alleged.

Plaintiff's objections to interrogatories 23(a), (b), 28, 29, 30 and 31 are overruled.

## VI.

■ Interrogatories 22(b) and 25(b) each in relation to an allegation of the complaint seek:

| Complaint | Interrogatory |
| --- | --- |
| The combination of defendants may give them a "decisive advantage" over competitors. | ■ What facts will be relied upon to prove the "decisive advantage." |
| The combination of defendants will eliminate potential competition between themselves and lessen it generally. | ■ What facts will be relied upon to prove "potential competition." |

———◆———

Plaintiff objects to this sixth group of interrogatories as seeking evidence. If plaintiff were required to answer these interrogatories "it would, in effect, be required to present its case in advance of trial."[17] This it need not do,[18] particularly in view of the facts which plaintiff is required to supply under the foregoing five categories where its objections are overruled.

Plaintiff's objections to interrogatories 22(b) and 25(b) are sustained.

This decision is the court's order.

16. 4 Moore's Fed.Prac. (2nd ed.) 2311.

17. United States v. Owens-Illinois Glass Company, D.C.N.D.Ohio 1957, 25 Fed. Rules Serv. 33.31, case 1.

18. V. D. Anderson Co. v. Helena Cotton Oil Co., D.C.E.D.Ark.1953, 117 F.Supp. 932, 941.