MICROTRON CORPORATION, a North Carolina corporation, and Kem-Wove Industries, Inc., a North Carolina corporation, Plaintiffs,

v.

MINNESOTA MINING & MANUFACTURING COMPANY, a Delaware corporation, and Union Carbide Corporation, a New York corporation, Defendants.

Civ. A. No. 1058–66.

United States District Court
D. New Jersey,
Civil Division.

Feb. 1, 1967.

McCarter & English, by Julius B. Poppinga, Newark, N.J., Covington & Burling, Washington, D. C., Robert B. Owen, Washington, D.C., of counsel, for plaintiffs.

Pitney, Hardin & Kipp, by Frank C. O'Brien, Newark, N.J., for defendant Union Carbide Corp.

Lum, Biunno & Tompkins, by William F. Tompkins, Newark, N.J., for defendant Minnesota Mining & Manufacturing Co.

COOLAHAN, District Judge:

The present matter has come before the Court on cross objections to interrogatories served pursuant to a schedule of discovery established by the Court. Plaintiff [Microtron Corporation] objects to 34 interrogatories served upon it by defendants. Minnesota Mining and Manufacturing [Minnesota] and Union Carbide Corporation [Carbide] object to 3 and 2 interrogatories respectively of those served upon them by plaintiff.

This is a suit for injunctive relief and treble damages for violation of the Sherman and Clayton Acts. Microtron is a wholly owned subsidiary of Kem-

Wove Industries, both are North Carolina corporations. Minnesota is a Delaware Corporation, while Carbide is incorporated in New York. The substance of plaintiff's complaint is that defendants have conspired to restrain trade through use of their patents, have conspired to monopolize the "batt" industry, and that they are monopolizing that industry.

In 1953 Carbide filed a patent application for Air Permeable Fibrous Batt, commonly known as the Maisel patent. This patent was granted in 1957. The Maisel patent is generally regarded as covering non-abrasive batt. In 1957 Minnesota filed a patent application for Low Density Open Nonwoven Fibrous Abrasive Article. The patent was granted in 1960 and is commonly known as the Hoover patent.

Generally, it is alleged that Minnesota and Carbide have conspired to divide up the batt market between them. Specifically, the Complaint states that Minnesota failed to disclose to the patent office the prior art represented by the Maisel patent. The Complaint implies that the Hoover patent actually infringes the Maisel patent in that the Hoover patent is essentially only "Air Permeable Fibrous Batt" with abrasive added. Further, as will be detailed below, it is alleged that Minnesota recognized the invalidity of their Hoover patent and that by a process of cross licensing and threats of suit against infringers of both abrasive and non-abrasive batt, has gained dominance in a field in which they have no valid patent monopoly, and that Carbide has conspired with Minnesota to achieve these ends.

The question at this juncture is over interrogatories that have been objected to by the parties.

## I. Interrogatories objected to by plaintiff.

*Minnesota's first set of interrogatories.*

8. State whether the Hoover Patent is identical with the Maisel Patent with an abrasive added thereto. If not identical, state in all respects where the two patents differ.

14. State in detail all facts which demonstrate in any way that the Hoover patent is invalid because of any prior patent.

15. State in detail all facts demonstrating that the Hoover patent is invalid because not patentable.

16. State in detail all facts demonstrating that the Hoover patent is invalid for any reason other than those given in the immediately preceding two questions.

23. State whether plaintiffs presently and since January 1, 1959, have manufactured any batt wherein the composition or use thereof is included within the specifications and claim of the Maisel Patent.

*Union Carbide's interrogatories.*

8. State whether any of the batt sold either of the plaintiffs is comprehended within any claim of U. S. Patent No. 2,784,132 (Maisel patent).

9. If the answer to the last previous interrogatory is in the affirmative then set forth the annual sales for each of the years 1959 through 1966 by each of the plaintiffs separately of all of the batt which is comprehended within any claim of U. S. Patent No. 2,784,132.

10. and 11. Call for the same information as to U. S. Patent No. 2,958,593 (Hoover patent).

After a hearing on objections to these interrogatories, it is conceded that the sole remaining objection is the plaintiff's assertion that they require a legal conclusion or that they are couched in legal terms which plaintiff is unable to interpret.

There is no doubt that the older rule is that such inquiries are objectionable on the theory that to require a layman to answer such questions would

result in binding his company in legal matters. Fischer & Porter Co. v. Sheffield Corp., 31 F.R.D. 534 (D.Del.1962).

 The more progressive approach to interrogatories dealing with legal matters is to view them in the factual context within which they arise. Singer Manufacturing Co. v. Brother International Corp., 191 F.Supp. 322 (S.D.N.Y.1960). The consideration is one of relevancy. Professor Moore states: "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer." 4 Moore's Federal Practice, 2d Edition 2354; Gagen v. Northam Warren Corp., 15 F.R.D. 44 (S.D.N.Y. 1953). Such a case by case approach has been followed in this jurisdiction. See National Cash Register Co. v. Realty & Industrial Corp., 12 F.R.D. 346 (D.N.J.1951); also my opinion in United States v. Aluminum, 268 F. Supp. 758 (D.N.J., Jan. 5, 1966).

The old rule disallowing this type of interrogatory was based in part on the assumption that the layman answering the question would do so completely on his own knowledge and information. We all know that today, particularly in such highly complex fields involving patent questions, the president of a corporation would not undertake to supply answers to technical interrogatories without the assistance of counsel. The rule is artificial and should not be applied without reference to the realities of a particular case.

Before attempting to evaluate what relation these interrogatories bear to the present suit, it will be useful to examine some portions of the Complaint:

"(7) * * * From time to time Carbide has claimed that any product made of batt in the abrasive or nonabrasive form infringes the Maisel patent."

"(9) * * * The 'low density open non-woven fibrous abrasive arti-cle' allegedly covered by the Hoover patent is essentially the 'air permeable fibrous batt' allegedly covered by Carbide's Maisel patent, but with an abrasive added thereto. At no time during the prosecution of its application for the Hoover patent did Minnesota disclose to the Patent Office the prior art represented by the Maisel patent."

"(10) Since at least as early as 1961 Carbide has recognized that for various reasons [including the prior art represented by the Maisel patent] the Hoover patent in all probability was and is invalid. Carbide communicated its understanding of such invalidity to Minnesota at least as early as 1961."

"(11) * * * Minnesota has recognized, * * * that the Hoover patent in all probability was and is invalid."

"(15) Pursuant to and in furtherance of the aforesaid combination and conspiracy the defendants have done, among other things, the following:

(b) Minnesota, while recognizing that the Hoover patent is in all probability invalid, has procured from Carbide, which also recognizes the probable invalidity of the Hoover patent, a public declaration that the Hoover patent is valid.

(c) Carbide, while recognizing that the Hoover patent is in all probability invalid, has agreed to take a license from Minnesota under said patent and to pay royalties to Minnesota thereunder."

From a reading of the foregoing paragraphs, defendants hypothecate that the Complaint must be charging one or more of the following:

(1) The Hoover and/or Maisel patents are either invalid or defendants are attempting to extend their

legal monopoly to products which are not encompassed within the legitimate claims of the Maisel and/or Hoover patents.

(2) All the materials manufactured and sold by plaintiffs come within the legitimate terms of the Hoover and/or Maisel patents. However, through a system of cross-licensing and conspiratorial action, defendants are using said valid patents to enforce such collusive violations of the anti-trust laws as price restrictions and division of the market.

(3) Defendants suspect that their patent or patents are invalid but have chosen not to test either their patents or those of prospective licensees via suit thereby creating a patent monopoly.

Before defendants may be compelled to answer such a "shotgun" complaint, they are entitled to narrow the possible claims to workable limits. Because of the ambiguous nature of the Complaint defendants are unable to ascertain exactly what is being charged. However, they surmise that certain issues are being raised from a reading of the Complaint. First, proceeding under either of the first two possible "charges" I have outlined above, it is essential for defendants to determine exactly what plaintiff is contending:

Does plaintiff concede the validity of defendants' patents?

Does plaintiff concede that some of their material falls within the valid claims of the Hoover and/or Maisel patents, or do they deny any or all infringement?

Does plaintiff allege that defendants have attempted to enforce their otherwise legal patent monopoly beyond the legitimate scope of those patents, or do they concede for the purposes of this litigation that defendants have not so acted?

Read in this context, all the interrogatories to which plaintiff objects under this heading are designed to make plaintiff detail exactly what is alleged to fall within the patent claims of defendants and, thereby, indicate what sales outside this restricted area are being curtailed by defendants. For example, plaintiff alleges as one of the acts in furtherance of the anti-trust violations that Carbide has brought suit against plaintiff in North Carolina for infringing the Maisel patent. Hence, it makes rather a substantial difference here whether the Maisel patent is valid or invalid and whether plaintiff's products do infringe. If the patent is valid and plaintiff's products do infringe, Carbide cannot be seen to violate the anti-trust laws by merely seeking to protect its patent monopoly through rigid prosecution of infringement suits.

Additionally, under the third and fourth counts of the Complaint defendants are charged individually with monopolizing. If the validity of the respective patents are conceded, and if it is also conceded that plaintiff's products fall wholly within those patents, where is the illegal monopolization by either defendant? Under those assumptions, defendants' patents grant them a lawful monopoly which they are free to exercise and enforce.

Hence, as to the theories labeled (1) and (2) above, defendants maintain that they are entitled to more specific information so that they may adequately prepare their defenses. Their catch-all argument is that plaintiff has included many charges in the complaint which may not necessarily apply to the individual defendants. Yet, because they are part of the Complaint, each defendant must respond. Therefore, the Complaint must either be amended to strike these general references, and the concomitantly implied theories or the plaintiff must furnish the requested answers to interrogatories.

During oral argument plaintiff's counsel stressed a version of theory (3) above and consequently advanced a substantially different view on the necessity of determining the validity or invalidity, and infringement or non-infringement

of these patents. Plaintiff asserted that, for the purpose of this antitrust suit, it makes no difference whether, in the abstract sense, defendants' patents are valid or invalid. The proposition was advanced that the suit here is for violation of the anti-trust laws, not for patent infringement, and, therefore, that the validity and scope of the patents in the abstract are not in issue.

Although the record is not particularly clear on this point, plaintiff's counsel argued that the controlling factor here is what defendants believed to be the status of their patents, not the actual validity or invalidity per se, nor whether there was in fact infringement or non-infringement. The argument appears to follow that even assuming the Hoover and Maisel patents are valid and that all of plaintiff's products infringed, (a) if defendants believed that one or both patents might be invalid and agreed not to challenge the validity; or (b) if they believed that plaintiff's products did not infringe, and agreed to enforce their patents beyond their valid scope, that these beliefs and agreements in themselves would be sufficient to support plaintiff's cause of action.

The difficulty with this proposition is, inter alia, that the Complaint simply fails to establish these claims. Reading that document in a light most favorable to plaintiff: a conspiracy is charged, and certain acts alleged to have been done which are evidence of and in furtherance of that conspiracy. Assuming, without deciding, that a conspiracy to enforce valid patent claims is insufficient to be a per se violation of the Acts, the alleged conspiratorial acts themselves must be examined with an eye toward what legally cognizable injury they might inflict upon the industry.

■■ Paragraph 14 of the Complaint charges a division of the market: abrasive batt to Minnesota, non-abrasive batt to Carbide. If the Hoover and Maisel patents are in fact valid, there may be nothing illegal, per se, in Minnesota and Carbide agreeing that the batt market should be divided pursuant to their valid claims. The same difficulty arises with regard to the issue of infringement. If the patents were in fact valid and covered all of plaintiff's products, the fact that defendants suspected that some of plaintiff's products might fall without their patents and still sought to vigorously enforce their claims, would not be a per se violation. Plaintiff also generally alleges that defendants have misused their patents by bringing patent infringement suits against some competitors but not against others, but there is nothing illegal per se about selective enforcement of a valid patent.

Similarly, with regard to the alleged suspicion or "recognition" of invalidity of the Hoover patent, it is clear to this Court that the actual validity vel non, will bear substantially on the legality of the defendants' behavior. Compare United States v. Singer Manufacturing Co., 374 U.S. 174, 83 S.Ct. 1773, 10 L. Ed.2d 823 (1963).

Finally, the questions of validity and infringement may bear on the issues of damages and standing to prosecute this private anti-trust action. Assuming that defendants' patents are valid and that all products manufactured by plaintiff fall within the legitimate scope of those patents, the question arises as to the nature of the relief to which plaintiff may be entitled.

Suffice it to say that it is possible and probable that there are counts in the Complaint wherein the validity and infringement questions are not at issue. However, as long as there is one allegation which the defendants must meet which turns in part in the slightest on the validity and scope of their patents, defendants are entitled to answers to the interrogatories now at issue. Of course, plaintiff is free to amend the Complaint to excise those allegations dealing with patent validity and infringement.

■ Numbers 4 and 7 of Minnesota's first set call for a recitation of the claims set forth in both patents. Minnesota

is in possession of this information; moreover, it is a matter of public record. The objections will be sustained.

■ Numbers 13 and 26 of Minnesota's first set call for information that grew out of the patent suit between Minnesota and Carbide. Again, Minnesota is in the best position to obtain this information. The objections will be sustained.

Interrogatory 37 of Minnesota's first set was withdrawn.

*Minnesota's second set of interrogatories.*

Plaintiff further objects to Numbers 7, 8, 10–13, 15–17, 18(a) and (b), 19(a) and (b), 22(b), 25, 26(a) and (b), 27 and 30–36 of Minnesota's Second Set of Interrogatories on the ground that they are couched in the specific terms of the Hoover patent. For example, Interrogatory Number 7 reads as follows:

"(7) Is it true that as of July 20, 1964, Microtron had not commercially sold and shipped any *Low Density Open Non-Woven Fibrous Abrasive material?* If the answer is not in the affirmative, state when plaintiff (a) manufactured for commercial sale, and (b) commercially sold *Low Density Open Non-Woven Fibrous Abrasive material.*" [Emphasis mine.]

Plaintiff submits that these interrogatories also call for legal conclusions. In addition, plaintiff maintains that they will be unable to answer these interrogatories because they can not understand the meaning of the "legal terms" and, therefore, would not be able to locate the specific material and records needed to supply satisfactory answers.

■ The previous discussion of questions allegedly seeking "legal conclusions" is applicable to these interrogatories. Neither is there an absolute prohibition against phrasing the interrogatories in terms of the patent in question.[1]

Many of the interrogatories in question here have been based directly on language from plaintiff's complaint. In some cases, Minnesota has inserted the patent terminology "Low Density Open Non-Woven Fibrous Abrasive Articles" for the term "abrasive material" used by plaintiff in their complaint.[2] The interrogatories directed both toward the batt industry in general and to the specific fields covered by the Hoover and Maisel patents are especially relevant in view of plaintiff's implication of patent invalidity and over-reaching as stated above.

As to plaintiff's assertion that they will be unable to respond to these interrogatories because the officers answering them will not be able to adequately interpret the legal terminology, this Court rejected similar objections in

1. " 'Where the interrogatories will simplify the case for trial they should not be held improper merely because they are in the language of the claims of a patent. But a party should not be required to construe the claims of a patent, make detailed comparisons of the devices involved in the litigation, or give opinions concerning them.' " Textrol, Inc., v. D. C. Oviatt Company, 37 F.R.D. 27, 28 (N.D.Ohio E.D.1964).

2. For example, Interrogatory 22 reads as follows:
"22. Identify all documents and facts, now known to plaintiff in support of the allegation in paragraph 15(e) of the Complaint, that Carbide 'has refrained from vigorous competition with Minnesota.'
(a) in the abrasive business broadly; and
(b) in the field of low density open non-woven fibrous abrasive articles."
Paragraph 15(e) of the Complaint reads as follows:
"15. Pursuant to and in furtherance of the aforesaid combination and conspiracy the defendants have done, among other things, the following:
(e) Carbide, although in a position to compete vigorously with Minnesota in the abrasive business, has limited its abrasives operations and has refrained from vigorous competition with Minnesota in such business."

United States v. R. J. Reynolds Tobacco Co., 268 F.Supp. 769 (D.N.J., June 3, 1966):

"The Court has full confidence in defense counsel's and Reynolds' understanding of the term reciprocity, the nature of reciprocity practices, and the procedures which they entail, even if Reynolds has not utilized them. In short, if the documents whose production the Court directs do exist, Reynolds will know which ones they are and where to find them." At pg. 781.

In this regard, a letter was introduced by defendants at the hearing which was purportedly signed by Microtron's president. The caption of that letter read:

"Re: Proposed License Under
Hoover Patent No. 2,958,593
Issued Nov. 1, 1960 for
Low Density Open Non-Woven
Fibrous Abrasive Article."

Defendants assert that such specific reference by plaintiff's president is hardly consistent with their present assertion that they will be unable to locate correspondence, documents, etc., requested under that very language.

Although the letter did not influence the determination of this Court because it has not been authenticated nor acknowledged by plaintiff, as a practical matter an inquiry into this letter may prove to be a convenient starting point.

As to the remainder of Minnesota's second set of interrogatories the following was agreed to by the parties:

(a) Interrogatory 1 shall be answered giving the approximate dollar volume of sales in New Jersey for the years in question.

(b) Interrogatories 37 and 38 are withdrawn.

II. Defendants' objections to plaintiff's interrogatories.

Defendants' objections are similar in nature and may be dealt with accordingly.

Interrogatory B to both Minnesota and Carbide was agreed by the parties to be limited in scope; the objection was withdrawn.

Interrogatories K directed to Minnesota and L directed to Carbide are to be answered with the provision that a protective order be drawn by defendants which will limit publication of the figures contained in the answers.

Finally, Interrogatory M directed to Minnesota requests documents relating to applications for licenses under the Hoover et al. patents. It was agreed by the parties that such information should be furnished. However, the Court directed that plaintiff not disclose, during depositions of licensee applicants or at any other time, the names of any other licensees or applicants.

The original date for the exchange of all interrogatories had been set for January 30, 1967. Because of the complex nature of the issues at Bar the Court has kept these objections under advisement beyond that date. Therefore, the time for answering all interrogatories, including those ruled upon by the Court above, shall be extended to February 20, 1967.

Let counsel submit the appropriate orders in conformance with the above opinion.