**LEUMI FINANCIAL CORPORATION,**
Plaintiff,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Third-Party**
Plaintiff,

v.

**Richard ROTHSTEIN, Third-Party**
Defendant.

No. 67 Civ. 3385.

United States District Court
S. D. New York.

Jan. 16, 1969.

---

Guzik & Boukstein, New York City, for plaintiff, by W. Harvey Mayer, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant and third-party plaintiff by Joseph A. Kilbourn, New York City, of counsel.

## MEMORANDUM

CROAKE, District Judge.

The defendant insurance company has objected to certain interrogatories pro-

pounded by the plaintiff in this action to recover on a Brokers' Blanket Bond issued by the defendant. The bond was to recover "[a]ny loss through any dishonest, fraudulent or criminal act of any of the Employees * * *" of the plaintiff.[1] The plaintiff claims that it has suffered such a loss.

## I.

Defendant has objected to Interrogatories 14 and 19 which, respectively, ask the defendant corporation to define "dishonest act" and "fraudulent act," and to state if certain specific acts are dishonest and fraudulent.[2] The basic objection to each of these interrogatories is that legal opinions are sought. Since the view of the courts toward this objection is changing, some discussion is warranted.

The purposes of federal discovery were clearly stated by the Supreme Court shortly after the Rules of Civil Procedure were adopted.

"The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues."[3]

These purposes are fostered by the broad scope of inquiry allowed for depositions and interrogatories.

"Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."[4]

A strict construction of this rule would make objectionable most interrogatories requiring opinions or conclusions as answers since they would neither be relevant nor lead to the discovery of admissible evidence. This approach was initially adopted by the courts which rigidly sustained objections to interrogatories asking for opinions.[5] Today, however, factual conclusions are regularly considered proper objects of interrogation[6] and interrogatories requiring

1. More fully "(A) Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees." The bond had a $150,000 limit.

2. "14. If the answer to question "12" is No, how does the defendant define a) a dishonest act; b) a fraudulent act?"
   "19. State whether defendant considers the following acts (if proven) dishonest, fraudulent, or neither dishonest or fraudulent?
   a) The actions of the principal in issuing guarantees of payment in the name of his employer without the employer's authority.
   b) The actions of the principal in issuing guarantees of payment in the name of his employer without the employer's authority, and contrary to the employer's explicit instructions.
   c) The action of the principal in secreting from his employer the letters of guarantee issued by him, and notices received as to the amounts being guaranteed.
   d) The actions of the principal in representing to the employer that he had examined shipping receipts when, in fact, no such shipping receipts were examined by him, knowing that the employer would rely on such a representation and advance money thereon.
   e) The actions of the principal in failing to report to his employers his knowledge that his employer was lending money against accounts receivable which did not exist, or were duplicate billings."

3. Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1946).

4. Fed.R.Civ.P. 26(b), made applicable by Fed.R.Civ.P. 33.

5. 4 Moore's Federal Practice ¶ 33.17 p. 2343–2364 (2 ed. 1953).

6. See, e. g., Zinsky v. New York Cent. R., 36 F.R.D. 680 (N.D.Ohio 1964), where the court permitted factual conclusions to be sought, but not legal opinions.

legal opinions as answers are met with a flexible approach. The latter will be permitted if

> " * * * the court is convinced that by requiring responses thereto the lawsuits could be expedited, the information obtained could lead to relevant evidence, the issues could be narrowed, unnecessary testimony and wasteful preparation could be avoided, or any other substantial purpose sanctioned by the discovery provisions of the Federal Rules could be served." [7]

Under this approach interrogatories requiring various degrees of factual conclusion and legal opinion have been approved. Defendants in antitrust cases may require the United States to define the relevant market and line of commerce.[8] In patent cases—where opinion-seeking interrogatories have most frequently been approved—questions requiring an interpretation of the patent in suit and asking for the manner and extent of infringement have withstood objections.[9] A defendant employer has been required to say whether its employee was acting within the scope of his authority when a tort was committed.[10] Courts frequently and readily require parties to state the facts underlying their claim or defense.[11]

These examples show that any attempt to draw a fine line between interrogatories seeking legal opinions and those asking for factual conclusions is destined to fail. A question asking for facts underlying a claim raises issues of legal relevancy at least, and an abstractly-framed question, such as Interrogatory 19 in this case, will inevitably be keyed to the facts in controversy. A distinction can be drawn based on the primary goal of interrogatories; the term "opinionseeking interrogatories" will be used here to designate interrogatories primarily intended to obtain legal opinions rather than to elicit factual conclusions.

The value of opinion-seeking interrogatories is that they may narrow the legal issues in a case and thus lessen the preparation needed. Particularly in complex litigation such as patent and antitrust actions, discovery is necessarily extensive. The time of counsel and the funds of clients are sometimes consumed by searches for hidden legal problems that the opposition is not concerned with or in painstaking documentation of some point that will not be seriously opposed. In spite of the fruitlessness of such discovery, the courts may be called upon to supervise it. In the process, justice is delayed for the parties directly involved as well as for other litigants in the court. Pretrial hearings and orders serve to narrow legal issues for trial; [12] the administration of justice would be im-

7. Empire Scientific Corp. v. Pickering & Co., 44 F.R.D. 5, 6 (E.D.N.Y.1968).

8. United States v. Renault, Inc., 27 F.R.D. 23, 29 (S.D.N.Y.1960); United States v. Continental Can Co., 22 F.R.D. 241, 247 (S.D.N.Y.1958).

9. Carrier Mfg. Co. v. Rex Chainbelt, Inc., 281 F.Supp. 717 (E.D.Wis.1968); Meese v. Eaton Mfg. Co., 35 F.R.D. 162 (N.D. Ohio 1964); Railex Corp. v. Cleaners Sales & Equip. Co., 7 F R Serv.2d 646 (E.D.N.Y.1963); International Nickel Co. v. Ford Motor Co., 15 F.R.D. 392 (S.D. N.Y.1954); Gagen v. Northam Warren Corp., 15 F.R.D. 44 (S.D.N.Y.1953). See also Microtron v. Minnesota Mining & Mfg. Co., 269 F.Supp. 22 (D.N.J.1967); Diversified Products Corp. v. Sports Center Co., 42 F.R.D. 3 (D.Md.1967); Textrol v. D. C. Oviatt Co., 37 F.R.D. 27 (N.D.Ohio 1964).

10. B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co., 24 F.R.D. 1 (S.D. Tex.1959).

11. Some cases in which the opinion aspect of this type of interrogatory is discussed are Kerr-McGee Corp. v. Texas Okla. Express, Inc., 43 F.R.D. 336 (W.D.Okla. 1967) (damaged merchandise); Luey v. Sterling Drug, Inc., 240 F.Supp. 632 (W. D.Mich.1965) (negligence in drug preparation); Rowbotham v. S. S. Atlantic, 192 F.Supp. 705 (S.D.N.Y.1961) (malpractice); Taylor v. Sound Steamship Lines, Inc., 100 F.Supp. 388 (D.Conn. 1951) (negligence in operation of a vessel). See also cases cited supra, n. 8.

12. See Fed.R.Civ.P. 16; S.D.N.Y., Cal.R. 13 and 14.

proved if a means to this end were available in the proper cases during discovery.

■ The only vehicle for narrowing issues during discovery is discovery itself.[13] The goal of the federal rules, "to secure the just, speedy, and inexpensive determination of every action," [14] will be fostered by permitting opinion-seeking interrogatories to be used in proper cases.

Objections to opinion-seeking interrogatories have occasionally been sustained on the technical theory that it is the party rather than the attorney to whom interrogatories are directed and a party should not be asked for, and cannot swear to, a legal opinion.[15] Particularly in complex cases where opinion-seeking interrogatories would be useful, it is unrealistic to suppose that a party draws answers to interrogatories himself.[16]

■ The value of opinion-seeking interrogatories may sometimes be outweighed by the possibility that the interrogated party may be prejudiced by his answer. An interrogatory may, for example, require the party to select his legal theory before he is ready; [17] subsequently, discovered facts may render his answer damaging.[18] In order to calculate the possibility of prejudice, the court should weigh the nature of the case, the knowledge of the answering party, the amount of discovery to be completed,

and the proximity of the issue to be narrowed to the central issues in the case. Only if the economy to be achieved is greater than the possible prejudice to the answering party may the court compel an answer to an opinion-seeking interrogatory.

■ The present case does not appear to be one of great complexity. Its resolution will require an interpretation of "dishonest, fraudulent, or criminal act," an application of that interpretation to the acts of the employee, and a determination of the timeliness of the notice of claim. Requiring the defendant to define the critical language of the bond would eliminate the need for some discovery; since, however, the interrogatories ask the defendant to resolve a central issue of the case, the possibility of the answer prejudicing the defendant is great. Under the standards set out above, this court finds that the possibility of prejudice outweighs the advantages narrowing this issue would yield to the plaintiff and to the court; the objections to Interrogatories 14 and 19 are therefore sustained.

## II.

Interrogatories 15, 16, 17 and 18 seek information on the way the defendant handled claims on bonds similar to plaintiff's from the time the bond was issued to plaintiff to about five months after the last transaction for which recovery is

13. Stipulations may serve this purpose and are preferable to opinion-seeking interrogatories, but discovery may be necessary to arrive at a stipulation. Where one party wishes to slow the progress of the action and will not enter into a stipulation, he can be forced to answer an interrogatory. Fed.R.Civ.P. 36 permits demands for admissions of fact, but not law.

14. Fed.R.Civ.P. 1.

15. Zinsky v. New York Cent. R., 36 F.R.D. 680, 682 (N.D.Ohio 1964); United States v. Selby, 25 F.R.D. 12 (N.D.Ohio 1960); United States v. Watchmakers of Switzerland Information Center, 168 F.Supp. 904 (S.D.N.Y.1958).

16. Particularly in patent cases, the party rather than the attorney may have the ex-

pertise necessary to answer the interrogatory. See Microtron Corp. v. Minnesota Mining & Mfg. Co., 269 F.Supp. 22 (D.N.J.1967); Meese v. Eaton Mfg. Co., 35 F.R.D. 162 (N.D.Ohio 1964). Where the party has such expertise (as is true in this case), the argument that the opinion sought is the attorney's work-product carries little weight even if a "pure" legal opinion is sought.

17. No formal election of remedies would occur. See Kerr-McGee Corp. v. Texas Oklahoma Express, Inc., 43 F.R.D. 336, 338 (W.D.Okla.1967).

18. Strictly speaking, a party would not be bound by his answer since he could amend it. The value of opinion-seeking interrogatories would be lost, however, if the answer given were not fairly firm.

sought. The defendant objects to these interrogatories, set out below, as irrelevant and burdensome.

"15. Between August, 1965 and December, 1966, how many policies of the type which is the subject of this action did plaintiff [sic] have in force?

"16. During the period August, 1965 to December, 1966, how many reports of losses through claimed a) dishonest acts; b) fraudulent acts, did the defendant receive?

"17. On what types or categories of a) dishonest acts; b) fraudulent acts, did the defendant make payment under its policies?

"18. On how many of the claims set forth in interrogatory "16" did the defendant receive sworn proofs of loss within 90 days of discovery of same?"

Full consideration of the objections to these interrogatories requires knowledge of facts underlying the litigation. Unfortunately, neither the full text of the bond in question nor a detailed account of the allegedly dishonest and/or fraudulent acts of the employee of the plaintiff have been given to the court.[19]

What does appear in the pleadings and answers to interrogatories is the following. Between December 1965 and July 1966 the plaintiff suffered losses as the result of certain conduct of an assistant vice-president of the plaintiff. The exact nature of this conduct is not clear. The defendant contends that the plaintiff discovered these losses some time in May of 1966, and states that the bond requires that written notice of loss be given as soon as possible after discovery and that

a proof of claim be filed within ninety days. On about October 13, 1966 plaintiff notified defendant that it may have sustained losses as a result of dishonest and/or fraudulent acts of an employee. By a proof of claim filed about November 9, 1966 and supplements thereto filed on December 1, 1966 and August 14, 1967, the plaintiff itemized losses of over $300,000.

■■ The burden of proof is generally on the party that objects to an interrogatory.[20] The objection of burdensomeness will therefore not be considered without some indication of why the interrogatory is difficult to answer.[21] Since the defendants have made no effort to explain why the particular questions asked would be difficult to answer the objection cannot be sustained on the ground of burdensomeness alone. The plaintiff has been just as lax, however, in showing that the interrogatories it propounded were within the scope of permissible interrogation.[22] Plaintiff's affidavit and memorandum say that the information sought will be of great value to it but only briefly suggest two possible theories for sustaining the interrogatories.

■ Plaintiff seems to contend that the defendant is estopped from defending on the ground that the notice of loss and proof of claim were untimely because payments were made under similar policies after similar delays. This theory seems to underlie Interrogatories 15, 16 and 18. Where it is clear from the face of an interrogatory that a considerable amount of effort would be necessary to answer it, and the purpose of the interrogatory is not to determine the existence

19. The critical language of the bond is given supra, n. 1. The parties could easily have apprised the court of the critical facts by submitting copies of the notice of loss and/or proof of claim.

20. E. g., Bvocik v. Firestone Tire & Rubber Co., 44 F.R.D. 238, 240 (E.D.Wis. 1968); United States v. An Article of Drug, 43 F.R.D. 181, 192 (D.Del.1967); Luey v. Sterling Drug, Inc., 240 F.Supp. 632, 634 (W.D.Mich.1965); Stoneybrook

Tenants Ass'n, Inc. v. Alpert, 29 F.R.D. 165, 167 (D.Conn.1961).

21. Wirtz v. Capitol Air Service, Inc., 42 F.R.D. 641 (D.Kan.1967); Zatko v. Rogers Mfg. Co., 37 F.R.D. 29, 31 (N.D.Ohio 1964).

22. We take defendant's objection to the relevance of the interrogatories to be an objection that they are outside the scope of permissible inquiry.

of an issue but to obtain evidence to buttress a position on an issue, then the interrogating party should come forward with some evidence to show that the issue is in fact in the case. With no evidence of an estoppel before it, this court is loath to compel the defendant to search through its files to compile what may prove to be useless information.

The second theory appears to support Interrogatory 17. Where an insurance policy, or other contract, is ambiguous on its face, the practical construction of that language by the parties is evidence of the intended meaning.[23] The circumstances under which the defendant has paid other bondholders may be of some help to a court in construing the words "dishonest" and "fraudulent." [24] Since, however, this court does not know just what the employee of the plaintiff is alleged to have done, it has no way of determining whether all the information sought in Interrogatory 17 will be useful to the plaintiff. Since answering the interrogatory would require an analysis of all the claims paid during the period in question and many of the claims may be dissimilar to this one, we are unwilling to compel an answer to the interrogatory as now framed.

Ordinarily where interrogatories appear too broad, although some of the information sought may be within the scope of permissible interrogation, the court will assist the parties in limiting the question. Because of the paucity of information before this court, that is impossible.

For the reasons stated, the objections to Interrogatories 15, 16, 17 and 18 are sustained at this time.

So ordered.

23. West v. Aetna Cas. & Sur. Co., 49 Misc.2d 28, 266 N.Y.S.2d 600, 603 (Sup. Ct.1965); order modified, 28 A.D.2d 745, 280 N.Y.S.2d 795 (1967); cf. Green v. Travelers Ins. Co., 286 N.Y. 358, 36 N.E. 2d 620 (1941); but see Connors v. Mutual Benefit Health & Acc. Ass'n, 49 Misc.2d 776, 268 N.Y.S.2d 154, 159 (Monroe County Court 1966), aff'd mem., 27 A.D.2d 704, 279 N.Y.S.2d 1020 (1967). See 13 Appleman, Insurance Law & Prac., § 7385, pp. 35-36.

24. By the time this case gets to trial circumstances may be entirely different; no attempt is made here to pre-judge the admissibility at trial of any of the information sought.