People of the State of Illinois, ex rel. Benjamin S. Adamowski, State's Attorney of Cook County, Illinois, Appellant, v. Richard J. Daley, Mayor of the City of Chicago, a Municipal Corporation, and Hertz Corporation, a Delaware Corporation, Appellees.

Gen. No. 47,651.

First District, Second Division.

June 2, 1959.

Released for publication June 26, 1959.

Benjamin S. Adamowski, State's Attorney of Cook County (Francis X. Riley, Assistant State's Attorney, of counsel) for plaintiff-appellant.

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago, for Hertz Corporation, intervenor-defendant.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin, James C. Murray, Assistant Corporation Counsels, and Robert J. Collins, Special Assistant Corporation Counsel, of counsel) for Richard J. Daley, Mayor of Chicago, and the City of Chicago, certain defendants-appellees.

JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by plaintiff from an order striking the complaint and dismissing the suit to declare void a contract between the City of Chicago and the Hertz Corporation.

The City, as owner and operator of the "Chicago Midway Airport," leased city-owned real estate to

Hertz and, in the same agreement, granted to Hertz a "concession" for a "rent-a-car service" at the airport, with the "exclusive right to advertise and solicit automobile rental business" on the airport property. The "Airport Lease," dated April 29, 1952, was for a term of five years, commencing April 1, 1952. Hertz, as "lessee," agreed to pay to the City, as "lessor," "for the use of premises, facilities, rights and privileges granted hereunder," a yearly sum, payable in monthly installments, or "ten (10) per cent of annual gross receipts from all automobile services rendered from location or locations furnished by Lessor, whichever amount is greater."

The City Council, by ordinance, had previously authorized the City Comptroller to lease on behalf of the City, to Hertz Driv-Ur-Self Stations, Inc., for an airport rental system, a parcel of vacant property adjacent to the airport, and space in the airport Terminal Building for "use as a counter in the sale of the rent-a-car service."

Later, in 1956, the City Council authorized the execution of an "Airport Lease Amendment," which was entered into on October 15, 1956, extending the term of the lease to March 31, 1962, increasing the annual minimum compensation, inserting a cancellation clause, and, except as amended, affirming and continuing all of the terms and provisions of the "Airport Lease."

The court sustained motions of the City and the intervening defendant, the Hertz Corporation, to strike the complaint and also dismissed the Mayor as a party defendant. The plaintiff elected to stand upon the complaint, and the action was dismissed. Plaintiff appeals from the entire order.

The contract and the amendment were entered into and executed without competitive bidding. The issue is whether the transaction violates the provisions

of the Municipal Purchasing Act (Ill. Rev. Stat., 1953, Ch. 24, Art. 22A).

It is admitted that the City may validly lease its real estate without competitive bidding, and that the City Council properly authorized a lease of its real estate; also, that the City may validly enter into a contract granting an exclusive right to operate an automobile rental service at its airports.

Plaintiff contends that the City officials went beyond the authorization to lease real estate, and to the extent that an exclusive concession to rent automobiles is granted to Hertz, the agreement is not a lease, but a contract in which the City is to receive money, and executed without competitive bidding, in violation of paragraph 22A–3 of the Municipal Purchasing Act.

██ ██ The agreement should be considered as a whole, although it is a contract which, in its nature, may be severable. Its terms, purpose and consideration are common and interdependent, making it entire, and apparently it was the intention of the parties to so regard it. (Martindell v. Lake Shore Nat. Bank, 15 Ill.2d 272.) We do not agree with the contention of the City that, taken as a whole, the agreement is a lease of real estate. It is essentially a contract for an automobile rental business concession, and the leasing of real estate was incidental to and dependent upon the letting of the concession. This conclusion presents the principal question as to whether or not the contract, as a whole, had to be let in accordance with the competitive bidding provisions of paragraph 22A–3.

██ In the absence of some statutory provision, competitive bidding is not an essential prerequisite to the validity of contracts by and with public bodies. (63 C.J.S., Municipal Corporations, § 996, p. 568; McQuillin, Municipal Corporations, 1950, 3rd Ed., § 29.-

91

31, pp. 272–274.) Furthermore, a statute requiring bids is "restrictive" and should not be extended beyond the language used. (Hertz Driv-Ur-Self System v. Tucson Airport Authority, 81 Ariz. 80, 299 P.2d 1071, 1074; Ex Parte Houston, 224 P.2d 281.) The court must take the statute as it finds it. It can neither add to, nor subtract from it. (Smith v. Board of Education of Oswego Community High School Dist., 405 Ill. 143, 148.) It is the court's duty to construe it as it stands. Davis v. City of Santa Ana, 239 P.2d 656, 661.

■■ The right of common carriers and terminal companies to grant exclusive contracts to solicit patronage at railroad stations has been generally approved throughout the country. The fact that the airport involved in this litigation is owned and operated by the City of Chicago should make no difference in the rule. In the absence of some express legislative direction, indicating that a contract for a concession, as is here involved, must be let by competitive bidding, this court is powerless to include it therein. (Ex Parte Houston, 224 P.2d 281 (Okla.) (1950).) The presumption obtains that the actions of public officials, in the performance of their official acts, are done in good faith and with honest motives. Smith v. Board of Education of Oswego Community High School Dist., 405 Ill. 143 (1950).

The Municipal Purchasing Act was originally enacted in 1947, and paragraph 22A–3 read:

"Except as otherwise herein provided, all purchase orders or contracts of whatever nature, for labor, services or work, the purchase, lease, or sale of personal property, materials, equipment or supplies, *or the granting of any concession,* involving amounts in excess of one thousand dollars ($1,000), made by or on behalf of any such municipality, shall be let by free and open competitive bidding after advertise-

ment, to the lowest responsible bidder, or in the appropriate instance, to the highest responsible bidder, depending upon whether such municipality is to expend or to receive money. . . ." (Italics ours.)

In 1949, the amount was increased to $2500, and in 1953, the phrase, "or the granting of any concession," was eliminated.

Also enacted in 1947 was paragraph 22A–4, entitled "Contracts not requiring competitive bids," wherein are enumerated contracts which, by their nature, are not adapted to award by competitive bidding and "shall not be subject to the competitive bidding requirements of this Article." In 1949, paragraph 22A–4 was amended, and the following was added:

". . . nor shall this Article be applicable to the granting or issuance pursuant to powers conferred by laws, ordinances or resolutions, of franchises, licenses, permits or other authorizations by the corporate authorities of the municipality, or by departments, offices, institutions, boards, commissions, agencies or other instrumentalities thereof, *nor to contracts or transactions, other than the sale or lease of personal property, pursuant to which the municipality is the recipient of money*." (Italics ours.)

We believe that these two paragraphs (22A–3 and 22A–4) should be read together as they were in force on April 29, 1952, because of plaintiff's contention that this is a contract involving an amount of money in excess of $2500 and "shall be let by free and open competitive bidding after advertisement, . . . to the highest responsible bidder, depending upon whether such municipality is . . . to receive money." (Par. 22A–3.)

■ We agree with plaintiff that it is an established principle that, in seeking to ascertain the intention of the legislature, the courts will consider not

only the language used but the evil to be remedied, the object sought to be attained, the reason and necessity for the amendment at the time of its passage, and the history of legislation on the particular subject involved. People v. Olympic Hotel Bldg. Corp., 405 Ill. 440 (1950) at p. 444; Hinsdale Sanitary Dist. v. Washburn, 354 Ill. 240.

Plaintiff argues that, even though, in 1953, prior to the "Airport Lease Amendment," the legislature eliminated the provision about "granting of any concession," it did not eliminate the provision in paragraph 22A–3 for contracts in which the City is to receive money, and, therefore, it never intended that contracts "for concessions in excess of $2,500" be eliminated.

■ We believe the 1949 amendment to paragraph 22A–4, previously set forth in detail, has as one of its objects and was intended to exclude contracts for all concessions, where they are contracts "pursuant to which the municipality is the recipient of money." This interpretation extends to concessions in excess of $2,500. This is demonstrated and affirmed by the 1953 amendment to paragraph 22A–3, which eliminated "the granting of any concession." Whether the contract for the concession and lease is termed a contract or a concession, we believe it comes within the exclusions intended by paragraph 22A–4, as amended in 1949, and within the language "nor to contracts or transactions . . . pursuant to which the municipality is the recipient of money." Therefore, the trial court properly sustained the motions to strike and dismiss the complaint.

In concluding that the instant contract is not subject to the competitive bidding requirements of the Municipal Purchasing Act, we believe it unnecessary to consider the other contentions that the complaint is insufficient.

94

The order in dismissing the Mayor was correct, as the Mayor was not a necessary party. He is not a party to the contract and no charges are made or relief sought against him.

For the reasons given, the order of the trial court striking the complaint, dismissing the Mayor as a party defendant, and dismissing the action, is affirmed.

Affirmed.

LEWE, P. J. and KILEY, J., concur.