**GREYHOUND LINES, INC., Plaintiff-Appellant,**

v.

**CITY OF CHICAGO, Defendant-Appellee,**

and

**Continental Air Transport Company, Intervening Defendant-Appellee.**

No. 16409.

United States Court of Appeals Seventh Circuit.

June 27, 1968.

---

Charles W. Singer, James C. Hardman, Robert J. Bernard, Chicago, Ill., Robert D. Rierson, Singer & Hardman, Chicago, Ill., of counsel, for appellant.

James E. Strunck, Raymond F. Simon, Charles Finston, Asst. Corporation Counsel, Chicago, Ill., of counsel, for defendant-appellee.

William R. Jentes, Donald W. West, Owen M. Johnson, Jr., Chicago, Ill., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel, for intervenor-appellee Continental Air Transport Co., Inc.

Robert L. Stern, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, Jerrold E. Salzman, Chicago, Ill., amici curiae.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

In May, 1967, plaintiff Greyhound Lines, Inc. attempted to begin bus service between Milwaukee, Wisconsin and the airport terminal buildings within Chicago-O'Hare International Airport. The airport is owned by the city of Chicago and is within the city boundaries. The city maintains a roadway for motor

traffic from the edge of the airport to the terminal buildings, a distance of more than one mile. The city refused Greyhound permits to enter the airport on this roadway and effectively prevented continuation of the service.

Greyhound brought this action to enjoin the city from hindering its operations and for other relief. It alleged these operations were within authority granted to it by the interstate commerce commission in certificates of public convenience and necessity, and alleged that the city was excluding it from the airport for reasons other than those provided by law and regulations. It alleged its willingness to pay required fees and to abide by the laws and regulations governing the operation of the airport.

Greyhound also challenged the validity of certain provisions of a contract the city has with Continental Air Transport Company, Inc., under which Continental provides bus and limousine ground transportation between the city's airports and the central business district of the city, and certain other places. The contract provides that the city may make contracts for transportation between O'Hare airport and other cities in Illinois, Iowa, and Wisconsin, but the opportunity must first be offered to Continental. Greyhound sought a declaration that this contract and an underlying ordinance are illegal and Continental was permitted to intervene.

It also appears that Greyhound and Continental presently have an arrangement for jointly providing transportation between O'Hare and Milwaukee. Certain Greyhound buses, bound from Milwaukee to Greyhound's downtown Chicago terminal, discharge passengers bound for O'Hare at a point on Cumberland avenue, within the city of Chicago and about 5 miles from O'Hare. Milwaukee bound buses receive passengers from O'Hare at that point. Continental provides transportation for these passengers between Cumberland avenue and the airport terminal buildings.

The district court denied Greyhound's application for a temporary restraining order and held a prompt trial. At the close of plaintiff's evidence, the court dismissed the complaint. The court decided that Greyhound's certificates of convenience and necessity did not confer authority to enter or serve the airport.

Greyhound then applied to the commission (without notice to the city or Continental) for emergency temporary authority to provide the service. On May 24, the commission dismissed the petition, reciting that the airport is within the city limits of Chicago and that Greyhound was granted authority to perform the service in No. M.C. 1515 Sub. 71.

Citing the May 24 order, Greyhound applied to the court for a new trial. The application was denied, and Greyhound has appealed.

Meanwhile the city sought reconsideration of the May 24 order. The commission denied the city's request.

Jurisdiction is predicated upon the proposition that this action arises under an act of Congress regulating commerce.[1] In the opinion of the district court, Greyhound failed to establish that it had authority from the interstate commerce commission to provide transportation between the O'Hare terminal buildings and Milwaukee. The city and Continental contend that the court ruled correctly on that point, but that even if Greyhound had such authority, the city could lawfully prevent Greyhound from entering the airport property and operating over the roadways within it. The district court did not reach the latter proposition.

Greyhound claims two sources of authority to provide service between the O'Hare terminal buildings and Milwaukee. One is a grant of authority for service between Chicago and Milwaukee over a specified route, and the second is a combination, formed by "tacking" a portion of that grant and portions of another.

1. 28 U.S.C. sec. 1337.

(1) *The grant over a specified route.* Certificate No. M.C. 1515 Sub. 71, issued October 8, 1956 (Sheet No. 3) granted authority for service "Between Chicago, Ill., and Milwaukee, Wis., * * *. From Chicago over city streets to Evanston, Ill., * * * thence over Dempster Street to junction U.S. Highway 41, thence over * * * U. S. Highway 41 * * * to Milwaukee, and return over the same route." This authority will be referred to as between Chicago and Milwaukee via Evanston. Greyhound points out that under commission practice, "From Chicago" means from any point within the corporate limits of Chicago.[2]

▪ The problem here is that the airport tract, although a part of the city, is joined to the balance of the city territory by a narrow corridor which contains no street. It is impossible to travel on a public highway from the airport into the balance of Chicago, or into Evanston, or along the route above described, without travelling for some distance on a public highway which is outside the city of Chicago and not described in the grant of authority. In our opinion, although service from any point within the corporate limits of Chicago, through Chicago, into Evanston across their common boundary, and thence to Milwaukee over the prescribed route is authorized, there is no authority for service from a point within the corporate limits of Chicago into territory which is neither Chicago nor Evanston, and then back into Chicago, or into Evanston, or onto the prescribed route at some other point.

▪ It happens that pursuant to an established commission procedure for notice of deviation,[3] Greyhound has obtained permission to use certain portions of the interstate system as alternatives to the route originally authorized between Chicago and Milwaukee via Evanston. Greyhound was, in fact, using one of these alternate routes for the most part to perform its attempted service to the airport. It is clear, however, that permission to use an alternate route is for operating convenience only and does not expand the authority previously granted. Greyhound's authority to serve O'Hare airport must be found in the original grant of authority.

▪ On its motion for a new trial, Greyhound relied on the commission's interpretation of this authority, as recited in its May 24 order. We do not find the recital persuasive because the proceeding was ex parte, and although Greyhound's application emphasized that the airport is part of the city of Chicago, it did not point out that the public highways which reach the airport entrance are outside the city.

▪ (2) *The combination route.* Sheet No. 1 of the same certificate authorizes operation in both directions between Chicago and Great Falls, Montana. Alternate routes are authorized between Chicago and Des Plaines, Illinois. By ingenious "tacking", authority in both directions can be spelled out from O'Hare airport, thence over U.S. Highway 45 to Des Plaines, thence over Dempster street to the junction with U. S. Highway 41, thence over U.S. Highway 41, to Milwaukee. Greyhound asserts that such tacking is a well recognized procedure, and the other parties do not appear seriously to dispute the claim.

There appears to be merit, therefore, to the proposition that Greyhound has authority, to the extent the commission can grant such authority, to serve the airport. This authority will be referred to as the U.S. Highway 45 combination.

The district court decided only that the portion of Sheet No. 3 of the certificate of public convenience and necessity, M.C. 1515 Sub. 71 which authorizes bus transportation between Chicago and Milwaukee via Evanston did not authorize Greyhound to provide bus transportation

2. See Administrative Ruling No. 102, 82 Motor Carrier Cases, Interstate Commerce Commission 581, 589 (1960).

3. 49 C.F.R. sec. 211.

over public highways between O'Hare airport, as a part of Chicago, and Milwaukee.

Greyhound argued, before the district court as well as here, that the U.S. Highway 45 combination also gave it authority to provide service between O'Hare and Milwaukee.

The district court appears not to have considered this claim, specifically, nor did he reach the issue whether the roadway by which vehicles enter the O'Hare airport property and travel to the terminal building is a public highway nor the issue whether, even if the roadway is not a public highway, a municipality which owns an airport can lawfully exclude an interstate motor carrier which is authorized by the interstate commerce commission to serve the airport facility and can lawfully favor some other motor carrier.

The city has argued that even if we concluded that Greyhound does have I. C. C. authority to operate over public highways between Milwaukee and the entrance to O'Hare, we must nevertheless affirm the judgment of dismissal by deciding as a matter of law (1) that the airport roadway is not a public highway and (2) that a municipality which owns an airport may lawfully make a contract for the provision of ground transportation and exclude other carriers, interstate as well as local, from the airport property.

Greyhound presented evidence tending to show that in appearance the airport roadway is a superhighway bearing a state highway number for part of its length, and that traffic directions and enforcement are similar to those else-

where in the city. It also showed that several other bus companies are serving the airport, either under contract or a trip permit arrangement. The city contends that Greyhound had the burden of proving a dedication and that it failed to make out a prima facie case. Because of the dismissal at the close of plaintiff's case, the city put in no proof.

The city has cited a number of decisions that a municipality which owns an airport may grant exclusive contracts for ground transportation service.[4]

Many of the decisions cited rely on the concept of proprietary function. Perhaps they simply reflect a judgment that it is reasonable in the interest of the travelling public for the municipality to make exclusive contracts in order to assure the availability of reasonably convenient local ground transportation. These cases have not dealt directly with a city's power to exclude a carrier offering to provide interstate bus transportation for the travelling public.

In May, 1967 Greyhound was actually operating over a deviation route which it was permitted to use in lieu of the route between Chicago and Milwaukee via Evanston, a grant which we are convinced does not authorize service to O'Hare. It has not shown that it has any intention of using the U.S. Highway 45 combination route nor that it would be clearly entitled under the deviation route procedure to use the interstate system as a deviation route in lieu of the U.S. Highway 45 combination route. If there is no intention of offering service on the basis of the tacked routes, we would be deciding difficult questions on a somewhat unsatisfactory record without a ripe case or controversy.

4. City of Oakland v. Burns (1956), 46 Cal. 2d 401, 296 P.2d 333; North American Co. v. Bird (Fla.S.Ct.1952), 61 So.2d 198; Bridges v. Yellow Cab Co. (1966), 241 Ark. 204, 406 S.W.2d 879; Harrelson v. City of Fayetteville (1967), 271 N.C. 87, 155 S.E.2d 749; People ex rel. Adamowski v. Daley (1959), 22 Ill.App. 2d 87, 159 N.E.2d 18, 19; and Milwaukee County v. Town of Lake (1951), 259 Wis. 208, 48 N.W.2d 1. See also decisions that railroad may grant taxicab or limousine companies exclusive rights to enter depot grounds owned by the railroad: Donovan v. Pennsylvania Company (1905), 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192; Delaware, L. & W. R. Co. v. Morristown (1928), 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523; Black and White Taxicab & Transfer Co. v. Brown and Yellow Taxicab & Transfer Co. (1928), 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681.

In the light of these circumstances, we deem it appropriate to modify the judgment to make it clear that it decides only the issue actually considered by the district court and that it will not prejudice another action if brought by Greyhound, based upon the U.S. Highway 45 combination authority.

The judgment of dismissal, appealed from, is ordered modified so as to provide that it is without prejudice to a claim by plaintiff of a right, to serve Chicago-O'Hare International Airport as a common carrier by motor vehicle, other than its claim of right so to serve said airport as a part of the city of Chicago under the grant of authority for transportation between Chicago and Milwaukee via Evanston on Sheet No. 3, Certificate of Public Convenience and Necessity, M.C. 1515 Sub. 71; and, as so modified, the judgment will be affirmed.