*In re* ESTATE OF MARIA STOICA (The County of Cook, Petitioner-Appellant, v. Enid L. Kempe, Guardian *ad litem* of Maria Stoica, *et al.*, Respondents-Appellees).

First District (1st Division)   No. 1—88—1483

Opinion filed September 17, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry, Myra J. Brown, and M. Anne Gavagan, Assistant State's Attorneys, of counsel), for appellant.

Enid L. Kempe, of Berwyn, appellee *pro se.*

JUSTICE MANNING delivered the opinion of the court:

The sole issue presented for review on this appeal is whether the trial court erred in ordering the petitioner, the County of Cook, to pay the fees of the court-appointed guardian *ad litem.*

On November 29, 1987, Maria Stoica was hit and injured by an

automobile while crossing the street and taken to Edgewater Hospital for treatment. She was later transferred to Cook County Hospital on December 5, 1987, where doctors recommended X rays and possible surgery for her fractured hip. However, Ms. Stoica would not consent to surgery at Cook County Hospital and indicated that she wanted to leave the facility although she had no plans for obtaining adequate medical care elsewhere.

On December 22, 1987, the County of Cook, through Virginia Wearring, the director of social services of Cook County Hospital, filed a plenary petition for temporary guardianship, pursuant to section 11a—1 *et seq.* of the Probate Act of 1975, as amended (hereafter Act) (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—1 *et seq.*), seeking the appointment of the office of the State Guardian as guardian for the person of Ms. Stoica. The trial court assigned Enid L. Kempe as guardian *ad litem* (hereafter GAL) or the respondent Maria Stoica.

During the hearing on the temporary guardianship petition which was held on December 24, 1987, the GAL orally reported her findings to the court. As a result of the GAL's oral report and the written reports of two physicians, the trial court entered an order that appointed the office of the State Guardian as temporary guardian to consent to X rays of Ms. Stoica's hip and leg area. The GAL's written report was filed on January 7, 1988.

Thereafter, on February 19, 1988, the court granted petitioner's request to withdraw the petition for guardianship because Ms. Stoica had been discharged from Cook County Hospital on December 31, 1987, and the hospital had no contact with her for follow-up care since that date. The court further ordered the petitioner to pay the costs of the GAL.

On March 11, 1988, the petitioner filed a motion to reconsider and vacate that portion of the February 19 order which required the petitioner to pay the fees and costs of the GAL. The basis of petitioner's motion was that section 11a—10(c) of the Act (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—10(c)) precluded recovery of the GAL's fees and costs from the petitioner but allowed recovery only from the respondent or the State.

On March 18, 1988, the court vacated that portion of the order of February 19, 1988, which required the petitioner to pay the GAL's fees and scheduled a hearing for March 31, 1988, as to the respondent's ability to pay those fees. On March 31, 1988, only the petitioner and the GAL appeared before the court for the hearing on the respondent's ability to pay the fees. Ms. Stoica did not appear. The trial judge stated that since it is "the petitioner's burden to show that the

respondent has funds" to pay the GAL and because there is "no evidence that the respondent does have funds, [he could] hardly direct her [Ms. Stoica] to pay you [GAL]." The judge found that the petitioner was required to pay the fees. The petitioner argued that it was the State's responsibility to pay the fees if the respondent was unable to do so. In response the judge commented that the legislature had failed to fund the account for payment of such fees and ordered the petitioner to pay the fees of the GAL in the amount of $357.50. He also directed the GAL to sign any necessary papers to allow the petitioner to seek reimbursement from the State.

On April 8, 1988, the petitioner filed a motion to reconsider and vacate the order of March 31, 1988, which the trial court denied on April 22, 1988. Thereafter, petitioner filed a timely notice of appeal.

The petitioner argues that the trial court erroneously ordered it to pay the fees of the GAL since payment of such fees is governed by section 11a–10(c) of the Act, which provides for payment by the respondent or State only. The GAL argues that the trial court properly determined that the petitioner was required to pay the GAL's fees on the grounds either that: (1) the court has inherent power to compensate a GAL and apportion the fee between the parties as equity requires; (2) the court can order compensation as an element of costs and tax the costs to the losing party; or (3) section 11a–10(c) provides a cumulative rather than exclusive remedy for a GAL to be compensated. Alternatively, the GAL contends that by application of the doctrine of desuetude, section 11a–10(c) has lost its force of law and is inapplicable here since the legislature has failed to fund the account contemplated under the statute.

The pivotal issue in this case is not whether a court-appointed guardian *ad litem* who represents a disabled adult is entitled to be paid fees, but rather *who* should pay those fees. The Act pertaining to guardians for disabled adults provides in relevant part:

> "The court shall appoint a guardian *ad litem* to represent the respondent, except that the appointment of a guardian *ad litem* shall not be required when the court determines that such appointment is not necessary for the protection of the respondent or a reasonably informed decision on the petition. The court may allow the guardian *ad litem* reasonable compensation. ***
> ***
> If the respondent is unable to pay the fee of the guardian *ad litem* or appointed counsel, or both, the court shall enter an order upon the State to pay from funds appropriated by the General Assembly for that purpose, all such fees or such amounts

as the respondent is unable to pay." Ill. Rev. Stat. 1985, ch. 110½, pars. 11a—10(a), (c).

■ The petitioner contends that taxation of the costs of the guardian *ad litem* fees to it is contrary to the statutory mandate, and thus, violative of the rules of statutory interpretation as set forth in the third district case of *In re Prior* (1983), 116 Ill. App. 3d 666, 452 N.E.2d 676. In *Prior*, this court recognized that allowance and recovery of costs, being unknown at common law, rest entirely upon statutory provisions which must be strictly construed. (*Prior*, 116 Ill. App. 3d at 668; see also *People v. Nicholls* (1978), 71 Ill. 2d 166, 173, 374 N.E.2d 194.) The court held that since guardian *ad litem* fees were to be paid in the "due course of administration" (Ill. Rev. Stat. 1985, ch. 110½, par. 27—4), but there being no administration therein, the statute, strictly construed, did not provide for the payment of guardian *ad litem* fees prior to the administration of the respondent's estate. *Prior*, 116 Ill. App. 3d at 669.

■ Preliminarily, we address the GAL's contentions that the trial court has inherent power to apportion the fees between the parties or tax such fees as cost to the losing party whom it asserts is the petitioner in this matter. We disagree with both of these arguments because the factual matrix here presented is governed by the provisions of the Act. Where, as here, the governing principle of law is grounded in a statute which is unambiguous, the trial court must hold the statute to mean what it plainly expresses. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; *In re Objections of Loughmiller* (1954), 3 Ill. App. 2d 146, 120 N.E.2d 683.) The statute's plain and certain meaning may not be restricted or expanded. *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1.

■ Moreover, it is well settled that courts have no legislative powers and their sole function is to determine and give effect to the intention of the lawmaking body. (*Dean Milk Co. v. City of Chicago* (1944), 385 Ill. 565, 53 N.E.2d 612.) Thus, where the language of an act is obvious and unambiguous, the only legitimate function of the court is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) Such function does not include supplying omissions or remedying defects in the statute (see *People ex rel. Adamowski v. Daley* (1959), 22 Ill. App. 2d 87, 159 N.E.2d 18), or adding to a statute conditions which depart from its plain meaning, or otherwise change the law (*People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 404 N.E.2d 368), under the guise of construction.

■ Although the trial court clearly understood that one of the

primary objectives of the Act was "to give the court an opportunity to fashion an appropriate guardianship arrangement for those that are mentally disturbed adults who may need a guardianship" (see Comments of Senator Nimrod, 80th Ill. Gen. Assem., Senate Proceedings, May 22, 1978, at 51),we find the trial court had no legislative authority to enlarge or otherwise add to the Act conditions which depart from its plain meaning. The Act clearly provides that the "court may allow the guardian *ad litem* reasonable compensation" and further stipulates that "[i]f the respondent is unable to pay the fee *** the court shall enter an order upon the State to pay from funds appropriated by the General Assembly for that purpose." (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—10.) We have reviewed the record and note that neither the parties below nor the trial court ever determined the respondent's ability or lack thereof to pay the GAL's fees. The record is silent as to whether or not the respondent was employed or receiving any type of public assistance or disability income. Moreover, from the time she was released from Cook County Hospital it appears that no one affiliated with the hospital or with this lawsuit had any contact with Ms. Stoica. Thus, we agree with the trial court that it is a reasonable conclusion that the respondent would not pay the fees. However, this reasonable deduction should not have formed the basis of the trial court's ruling that because it is necessary that a GAL be compensated in such cases it became the duty of the petitioner to pay the fee. The statute does not provide that where the respondent is unable to pay the fee, the court shall direct the petitioner to pay it; to the contrary, the Act directs the court to order the State to pay the fee under these circumstances.

We are mindful of the trial court's comments and the GAL's argument below and on appeal that the legislature has failed to make available the appropriations to pay these fees. Yet, we decline to make a finding that the doctrine of desuetude applies here. While the legislature has made some cutbacks in the budget, it continues to enact law for "An Act to make appropriations for the ordinary and contingent expenses of the Guardianship and Advocacy and Advocacy Commission." See *e.g.*, 85th Ill. Gen. Assem., Senate Proceedings, June 23, 1987, at 102.

Furthermore, we are guided by the age-old principles that the General Assembly intended to enact an effective statute (*Pliakos v. Illinois Liquor Control Comm'n* (1957), 11 Ill. 2d 456, 143 N.E.2d 47; see also *Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835), and where that statute is unambiguous and clearly expresses the intention of the lawmaking body, the court must give effect to such in-

tentions regardless of the consequences. *City of Nameoki v. City of Granite City* (1950), 408 Ill. 33, 95 N.E.2d 920; *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 425 N.E.2d 522.

Accordingly, by applying the same strict rules of statutory construction as noted earlier (see *Prior*, 116 Ill. App. 3d 666), we find that it was error for the trial court to direct the petitioner to pay the fees of the court-appointed GAL. On the facts here presented we believe that such a finding, absent clear and express statutory authorization, would not only depart from the letter of the Act, but would also undermine the ability and willingness of governmental agencies like Cook County Hospital to seek the services of the office of the State Guardian to assist respondents such as Ms. Stoica. On the other hand, our ruling today is not intended to discourage GALs from acting on behalf of alleged disabled respondents who become unavailable or are otherwise "unable to pay" their fees once the services have been rendered. Obviously, a delicate balance must be met; however, the responsibility for striking such an accord to either provide another recourse or find the needed appropriation lies with the General Assembly, not the judiciary.

For the foregoing reasons, the judgment of the circuit court of Cook County taxing the costs and fees against the County of Cook in the amount of $357.50 is reversed.

Reversed.

CAMPBELL and O'CONNOR, JJ., concur.