2022 IL App (1st) 210521

SIXTH DIVISION
January 7, 2022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-21-0521

| | | |
|---|---|---|
| *In re* ESTATE OF RALPH WATTS, an Alleged Person With a Disability, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Metropolitan Family Services: Adult Protective Services, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | No. 2020 P 4994 |
| Ralph Watts, | ) ) | |
| Respondent, | ) ) ) | Honorable Shauna Boliker, Judge Presiding. |
| (Legal Aid Society of Metropolitan Family Services, Appellant; Hoogendoorn & Talbot LLP, Appellee)). | ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Harris and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal addresses the circuit court's authority to award fees to a guardian *ad litem*
(GAL) appointed to represent the interests of a disabled adult in a guardianship proceeding.
Meghan Terry Davis of the appellee law firm Hoogendoorn & Talbot LLP (Hoogendoorn) was
appointed by the court to serve as GAL for Mr. Ralph Watts in a guardianship proceeding initiated
by the appellant in this matter, Legal Aid Society of Metropolitan Family Services (Legal Aid
Society). Ms. Davis agreed to serve as GAL for Mr. Watts after a conversation with the court,

which she says left her with the understanding that she would be paid reasonable fees for her services. Following the death of Mr. Watts, which terminated the guardianship proceeding, Ms. Davis petitioned the court for an order directing Legal Aid Society to share with her the fees it had been paid by the Department on Aging for initiating the case. The circuit court granted the petition and ordered Legal Aid Society to pay Ms. Davis $2500 for her services as GAL. Legal Aid Society now appeals, arguing that the circuit court had no authority to order it to share its fees with Ms. Davis.

¶ 2    For the following reasons, we reverse and vacate the circuit court's order granting Ms. Davis's petition for fees.

¶ 3                                    I. BACKGROUND

¶ 4    The Department on Aging is mandated by the Adult Protective Services Act to "establish, design, and manage" a protective services program to provide assistance to eligible, adult victims of elder abuse, neglect, self-neglect, and exploitation. 320 ILCS 20/3 (West 2020). The Department contracts with various provider agencies throughout the state to administer these services. *Id.* One such provider agency is Metropolitan Family Services: Adult Protective Services (APS). On September 15, 2020, Legal Aid Society filed a petition, listing itself as counsel for the petitioner, APS. The petition sought to appoint the Office of State Guardian as a guardian for Ralph Watts, a man who was alleged in the petition to be a person with a disability.

¶ 5    According to the petition and a transcript from the initial hearing, the Chicago Police Department had found Mr. Watts in a restaurant far from his home. He appeared to be malnourished, dehydrated, and disoriented. He was wearing dirty clothes, and officers reported being able to see his bones. He was taken to the Little Company of Mary Medical Center for treatment, where he was diagnosed with dementia, memory impairment, and an inability to care

for himself. The physician treating Mr. Watts recommended his transfer to a rehabilitation facility. APS then began an investigation into Mr. Watts's living conditions. They inspected the home where he had been living and determined that it was a threat to his safety. The floors were dirty, the refrigerator was empty, and there was no furniture.

¶ 6   The case was assigned to Judge Shauna Boliker, and a hearing (to be conducted over Zoom) was set for September 16, 2020. On the scheduled hearing date, Ms. Garl Smith, the attorney from the Legal Aid Society, mistakenly entered the wrong room, appearing not before Judge Boliker but before Judge Susan Kennedy-Sullivan. Unaware of the mix-up, Judge Kennedy-Sullivan began to preside over the hearing and listen to Ms. Garl Smith's description of Mr. Watts's predicament. By happenstance, while Mr. Watts's case was being discussed before Judge Kennedy-Sullivan, Ms. Davis was also present in the courtroom, waiting to be heard on an unrelated matter. Judge Kennedy-Sullivan then asked Ms. Davis if she would be willing to serve as GAL for Mr. Watts, and Ms. Davis agreed to take on the case.

¶ 7   The court described the case to Ms. Davis—and the prospect that she would be paid for her service—as follows:

> "THE COURT: Ms. Davis, this is the new case and I'm wondering if you're willing to be appointed [GAL] on this case?
>
> MS. DAVIS: Sure.
>
> THE COURT: This is Ms. Garl Smith. She's an attorney with the Legal Aid Society. This gentleman who [*sic*] was found in pretty dire straights *** It is a petition being filed by APS.
>
> MS. DAVIS: Okay.
>
> THE COURT: I am not sure whether APS is in a position to pay GALs, but I think

they are. But I'm not sure because its Metropolitan Family Services.

MS. DAVIS: That's fine, your Honor.

THE COURT: Ms. Garl Smith, are you — do you know one way or the other whether they will pay, at least to some extent, for a guardian *ad litem*?

MS. GARL SMITH: Adult Protective Services, you mean?

THE COURT: Yes.

MS. GARL SMITH: I, I would have to look into that. I can't say at this time.

THE COURT: I think, historically, Metropolitan Family Services is willing to pay some, some GAL fee, perhaps up to a limit. But my experience, at least, historically, was that they would.

MS. GARL SMITH: Okay.

THE COURT: So if you could look into that. I know they file a waiver to file these petitions, but I think that's a different analysis."

¶ 8 Shortly after this exchange, Ms. Davis realized that Mr. Watts's case was not on Judge Kennedy-Sullivan's call but belonged to another judge, and she alerted the court. After confirming the mistake, Judge Kennedy-Sullivan promptly told Ms. Garl Smith to present the case to the correct judge, explaining that "everything that's on my record will be vacated or redacted or whatever the word is." Before the hearing ended, Ms. Davis told Ms. Garl Smith and the court, "if you want to tell Judge Boliker, I serve for her as well, I'm happy to serve if that would be easier, but I defer to her on that."

¶ 9 Ms. Garl Smith then appeared before Judge Boliker with the same petition. After describing the case, she told the court: "Your Honor, may I just say that Megan Terri Davis [*sic*] has offered to be the [GAL] in this case." Judge Boliker then asked, "[b]ecause it's a *pro bono* appointment,

correct?" Ms. Garl Smith answered "yes." Ms. Davis was not in the courtroom during this exchange. Judge Boliker then appointed Ms. Davis as GAL and the Office of State Guardian as the temporary guardian of the person of Mr. Watts.

¶ 10    Unaware of the specifics of the conversation between Judge Boliker and Ms. Garl Smith, Ms. Davis accepted the appointment; however, she claims she never intended or agreed to work *pro bono*. According to Ms. Davis, she "opened the file with her firm believing that the [GAL] appointment" would be a paid appointment.

¶ 11    Mr. Watts objected to the appointment of the Office of State Guardian as his plenary guardian. His daughter, Diana Morris, then filed a cross-petition to serve as his guardian. While the case was pending, in her role as the GAL for Mr. Watts, Ms. Davis met with the interested parties and investigated various options for resolving the case. Mr. Watts passed away before a determination could be made regarding any appointment of a plenary guardian.

¶ 12    After Mr. Watts's death, Ms. Davis filed a petition for GAL fees for the 10.85 hours she had worked on behalf of Mr. Watts. Specifically, Ms. Davis sought 50% of the $5000 lump sum payment she claimed Legal Aid Society received each time it petitioned for an adult guardianship on behalf of APS. Ms. Davis did not cite a specific source for the $5000 figure other than "information and belief." She also claimed that it was common practice among probate judges to split fees in this fashion. Legal Aid Society objected. On April 7, 2021, the court granted Ms. Davis's petition for fees and awarded her $2500 (to be paid by Legal Aid Society) for the services she and her firm, Hoogendoorn, had rendered as GAL.

¶ 13                                    II. JURISDICTION

¶ 14    The circuit court's order granting Ms. Davis's petition for fees was entered on April 7, 2021. Legal Aid Society timely filed its notice of appeal on May 6, 2021. Accordingly, this court

has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 15                                    III. ANALYSIS

¶ 16    On appeal, Legal Aid Society seeks reversal of the circuit court's order directing it to pay Ms. Davis $2500 in GAL fees. It argues that, under section 11a-10(c) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-10(c) (West 2020)), the court had no authority to assess fees against the counsel of record for an exempted guardianship petitioner. We agree and reverse.

¶ 17                                    A. Standard of Review

¶ 18    The parties disagree on the proper standard of review to apply in this case. Legal Aid Society urges us to review the circuit court's decision *de novo*, framing the central issue in this case as a matter of statutory construction, specifically, whether the circuit court's actions were permitted by section 11a-10(c) of the Probate Act. Hoogendoorn, on the other hand, urges us to apply the more deferential abuse of discretion standard, arguing that "where the trial court has the power of discretion and exercises it without abuse, the Appellate Court is reluctant to interfere." See *Whitney v. Madden*, 400 Ill. 185, 190 (1948).

¶ 19    While Hoogendoorn is correct that the circuit court has discretion in awarding GAL fees, the power to award such fees is defined by section 11a-10(c), and whether the circuit court's actions in this case exceeded what is permissible under that statute is unavoidably a question of statutory interpretation. It is well established that questions of statutory interpretation, which are questions of law, are reviewed *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. Thus, *de novo* review is the appropriate standard to apply in this case.

¶ 20                                    B. The Statute

¶ 21    Section 11a-10(c) of the Probate Act (755 ILCS 5/11a-10 (West 2020)) governs the

awarding of GAL fees in proceedings involving the guardianship of disabled adults. *In re Estate of Bishop*, 333 Ill. App. 3d 1113, 1114 (2002). That section reads as follows:

"(c) If the respondent is unable to pay the fee of the guardian ad litem or appointed counsel, or both, the court may enter an order for the petitioner to pay all such fees or such amounts as the respondent or the respondent's estate may be unable to pay. However, in cases where the Office of State Guardian is the petitioner, consistent with Section 30 of the Guardianship and Advocacy Act, where the public guardian is the petitioner, consistent with Section 13-5 of this Act, where an adult protective services agency is the petitioner, pursuant to Section 9 of the Adult Protective Services Act, or where the Department of Children and Family Services is the petitioner under subparagraph (d) of subsection (1) of Section 2-27 of the Juvenile Court Act of 1987, no guardian ad litem or legal fees shall be assessed against the Office of State Guardian, the public guardian, the adult protective services agency, or the Department of Children and Family Services." 755 ILCS 5/11a-10(c) (West 2020).

¶ 22    As this court explained in *In re Estate of Stoica*, 203 Ill. App. 3d 225, 229 (1990), because section 11a-10(c) addresses "the allowance and recovery of costs *** unknown at common law," the power of a circuit court to assess a party for GAL fees "rests *entirely* upon the statutory provisions which must be strictly construed." (Emphasis added.) *People v. Nicholls*, 71 Ill. 2d 166, 173 (1978). We further explained that "[w]here, as here, the governing principle of law is grounded in a statute which is unambiguous, the trial court must hold the statute to mean what it plainly expresses." *Stoica*, 203 Ill. App. 3d at 229. Accordingly, we construe the provisions of section 11a-10(c) narrowly "so as to prohibit the assessment of [GAL] fees against any person or entity who does not fit into one of the categories specified in the statute." *Bishop*, 333 Ill. App. 3d at

1115.

¶ 23    On appeal, Legal Aid Society argues that the circuit court had no authority under the provisions of section 11a-10(c) to assess it—the counsel of record for the guardianship petitioner—GAL fees. In response, Hoogendoorn concedes that, while the plain meaning of section 11a-10(c) prohibits the circuit court from directly assessing APS—an adult protective services agency—for GAL fees, the circuit court's actions in this case were permissible because the statute is silent on whether "a GAL can share fees with a separate organization that filed the petition *on behalf of* APS." (Emphasis added.) In our view, the circuit court's actions in this case were unauthorized by statute.

¶ 24    As we explained in *Bishop*, section 11a-10(c), narrowly construed, provides that "the *only* parties against whom the court may assess guardian *ad litem* fees are the respondent or the respondent's estate and the petitioner, so long as the petitioner is not the Office of State Guardian or an elder abuse provider agency." (Emphasis added.) *Id.* Further, as the first sentence of the provision makes clear, the court's ability to assess fees against a guardianship petitioner is contingent on the respondent's (or the respondent estate's) inability to pay. 755 ILCS 5/11a-10(c) (West 2020).

¶ 25    Section 11a-10(c) establishes a two-step analysis that the circuit court must follow before assessing any GAL fees against a guardianship petitioner. First, it must determine that the respondent or (respondent-estate) is unable to pay. If the respondent can pay, then the analysis is over: the respondent will bear the burden of paying the GAL fees. If, on the other hand, the court determines that the respondent cannot pay, the court then advances to step two of the analysis. At step two, the court looks to the identity of the petitioner to determine whether the petitioner can be statutorily assessed for the fees, as the statute delineates several categories of petitioners that are

exempt from contributing to GAL fees. If the guardianship petitioner is "an adult protective services agency"—as it was in this case—then, under the plain language of the statute, "no guardian ad litem \*\*\* fees shall be assessed against [the agency]." *Id.*

¶ 26    Under the statute, if a respondent cannot pay, then the only other party that can be assessed GAL fees is the guardianship petitioner. But here, the guardianship petitioner was APS, one of several entities expressly granted an exemption. Nothing in section 11a-10(c) authorizes a court to assess a petitioner's *counsel of record* for GAL fees. As Legal Aid Society explains in its brief, "[t]he Illinois General Assembly enacted legislation to protect adult protective service agencies from paying GAL fees, and it makes no sense for that prohibition to be circumvented by allowing fees to be assessed against counsel for the exempt entity—particularly where counsel itself is also 501(c)(3) charitable organization." We agree. As the circuit court's fee award violates section 11a-10(c), its order must be reversed and vacated.

¶ 27    Hoogendoorn mentions in its brief that a new and substantially different version of section 11a-10(c) will go into effect on January 1, 2022. Hoogendoorn suggests that language of the amendment supports its argument that section 11a-10(c) does not preclude a court from requiring the counsel of record for a guardianship petitioner to pay reasonable GAL fees. However, since Hoogendoorn acknowledges that the amended statute is inapplicable, we will not opine on whether the result would be different under the amended statute. Nothing about that amendment suggests that it was intended to clarify the earlier statute, and in any event, the statutory language in the applicable statute is quite clear.

¶ 28    Hoogendoorn also argues that it is inequitable to deny it a portion of Legal Aid Society's fees since Ms. Davis had a reasonable expectation—based on what she was told by a judge—that she would be remunerated for her service. We are sympathetic to Ms. Davis and acknowledge that

there is an element of unfairness to what she experienced in this case, but the statute must govern. As in *Stoica*, 203 Ill. App. 3d at 230, our decision today is guided by "the age-old principle[ ] that the General Assembly intended to enact an effective statute." Where, as here, "that statute is unambiguous and clearly expresses the intention of the lawmaking body, the court must give effect to such intentions regardless of the consequences." *Id.* at 230-31. Even if, as the record certainly suggests, the circuit court in this case was simply trying to achieve an equitable outcome, the provisions of section 11a-10(c) are clear and must be enforced as written. Nothing in that statute permits the court to do what it did here. Accordingly, its order must be vacated.

¶ 29                                    IV. CONCLUSION

¶ 30     For the foregoing reasons, the order of the circuit court requiring Legal Aid Society to pay Ms. Davis $2500 for her services as GAL is vacated.

¶ 31     Order vacated.

No. 1-21-0521

| | |
|---|---|
| **Cite as:** | *In re Estate of Watts*, 2021 IL App (1st) 210521 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-P-4994; the Hon. Shauna L. Boliker, Judge, presiding. |
| **Attorneys for Appellant:** | Scott C. Solberg, of Eimer Stahl LLP, and Loren Gutierrez, Brian Oltman, and Emma Garl Smith, of Legal Aid Society of Metropolitan Family Services, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Meghan Terry Davis and Richard D. Boonstra, of Hoogendoorn & Talbot LLP, of Chicago, for appellee. |